THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD JAMES, Defendant-Appellant.

First District (1st Division)   No. 1—90—0033

Opinion filed September 30, 1993.

Michael J. Pelletier and Anna Ahronheim, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Eileen O'Neill, and Linda Jakubs, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, defendant Reginald James was convicted, *in absentia*, of aggravated arson. The trial judge sentenced defendant to 10 years in the Illinois Department of Corrections. On appeal, defendant contends that: (1) where he was arrested for arson without probable cause and his confession was the fruit of this unconstitutional seizure, the trial judge erred in denying his motion to quash his arrest and suppress his confession on the theory that the police had probable cause to arrest him for battery; (2) he was denied a fair trial for arson and aggravated arson where the court gave the jury a non-Illinois Pattern Jury Instruction (IPI) concluding instruction and verdict forms which precluded the jury from finding him not guilty of arson; (3) the case must be remanded for resentencing because the presentence report did not comply with the governing statute in that it lacked required information and was demonstrably inaccurate; and (4) he must be granted a new sentencing hearing on his conviction because the court relied in aggravation on the fact that the lives of innocent people were placed in peril by defendant's conduct when this was the aggravating element which enhanced his crime from arson to aggravated arson.

On October 6, 1987, at approximately 1:15 a.m., a fire started in Mary Montanez's third-floor apartment at 2648 North Milwaukee Avenue. The fire department arrived moments later and the fire was brought under control within 20 or 30 minutes. After the blaze was brought under control, battalion chief Edward Kelly discovered that there were actually four separate fires in the apartment. He then notified the office of fire investigations.

Detective Kenneth Urban from the Chicago police department's bomb and arson unit was assigned to investigate the fire. He arrived at the scene at approximately 11 a.m. on October 6, 1987. Urban's investigation confirmed that the fire had started in four different locations in the apartment. According to Urban, one fire had started in the living room, one had started in the kitchen and two fires had begun in the bedroom. All the electrical outlets were in normal condition; thus, Urban eliminated the possibility of an accidental fire. Consequently, Urban testified that in his expert opinion "in the field of cause and origin on the subject of bomb and arson," the fire was the result of arson. He based his opinion on the fact that the fire had multiple points of origin and the normal condition of the electrical outlets. Subsequently, defendant became Urban's primary suspect and, on October 15, 1987, Urban arrested defendant for arson. On November 13,

1987, the grand jury indicted defendant for arson (Ill. Rev. Stat. 1991, ch. 38, par. 20—1(a) (now 720 ILCS 5/20—1(a) (West 1992))) and aggravated arson (Ill. Rev. Stat. 1991, ch. 38, par. 20—1.1(a)(1) (now 720 ILCS 5/20—1.1(a)(1) (West 1992))).

Prior to trial, defendant filed a motion to quash his arrest and a motion to suppress his confession on the grounds that he was arrested for arson without probable cause and that his statements were coerced. At the pretrial hearing on the motions, Urban testified that, on October 6, 1987, while he was investigating the early morning fire, he spoke to Mary outside the apartment building. According to Urban, Mary told him that she was not at her apartment when the fire started, but that she believed defendant had started the fire. Urban stated that Mary then informed him that defendant was her ex-boyfriend and that he had come to her apartment the night before. Defendant had once lived in the apartment with Mary, at one time had keys to the apartment, and on the night of October 5, somehow was able to gain entry to the apartment building without being "buzzed in" by Mary. Urban testified that Mary said that defendant was drunk and acting strange so she insisted he leave. He testified that she told him that after defendant left, she discovered a message written on a blackboard in her apartment which read that "he was sorry they broke up and he wished her well, something like that." According to Urban, Mary said that defendant returned an hour later. This time, however, he was angry and he hit and kicked her before fleeing. She called the police, but defendant had left before the police arrived. She told Urban she was afraid for her safety, so she called her ex-husband, James Montanez, who came over and took them to her mother's house, which was located three blocks away.

Urban further testified that, during his investigation, he also spoke to Mary's ex-husband James. James had told Urban that it was approximately 12:30 a.m. on October 6, 1987, when he arrived at 2648 North Milwaukee Avenue to pick up Mary and their daughter and take them to Mary's mother's house. According to Urban, James told him that when he drove up and parked his car, he met defendant in the street and spoke to him.

Urban testified that, as a result of these conversations with Mary and James Montanez, he attempted to contact defendant. After several unsuccessful attempts, he left a message that he needed to speak to defendant "in regards to a fire that occurred at Mary Montanez's apartment." Subsequently, defendant contacted Urban. Urban said he told defendant he was investigating the fire and that defendant denied setting it. Urban testified that he then asked defendant if he

would be willing to take a polygraph test "to clear his name of it." Defendant agreed and Urban set up an appointment on October 15 at 9 a.m. with the polygraph unit in the crime lab.

According to Urban, defendant arrived at the bomb and arson office at approximately 12 p.m. on October 15. He then walked defendant to the crime lab where a polygraph examiner administered the test. Urban stated he did not handcuff defendant or threaten or promise him anything in order to get him to take the polygraph test. Urban testified he was not present while defendant was being given the test. He stated that, after the test was administered, the polygraph examiner came out of the examining room and told him that defendant "had failed every question given regarding the fire." Urban testified that he then entered the examining room, informed defendant he had flunked the test, placed defendant under arrest and read him his *Miranda* rights. According to Urban, at that time, defendant admitted to setting the fire. He denied threatening defendant or promising him that, if he confessed, he would be charged with a misdemeanor instead of a felony. When asked on cross-examination whether charges had been filed against defendant for battery, Urban responded "I think I may have put a battery charge on."

Robert Torvar, the polygraph examiner, testified that prior to administering the polygraph test to defendant, he read defendant a consent form. He testified that defendant signed the form freely and was not threatened, restrained or promised anything in return for taking the test. Additionally, he stated that he explained the test to defendant and told him the questions that would be asked. Torvar said that after defendant completed the test, he told defendant he had flunked. He then left the examining room to inform Urban of the results.

Judith Mondello, an assistant State's Attorney, testified that on October 15, 1987, at approximately 3:15 p.m., she was at the bomb and arson unit of the Chicago police department investigating a fire which was determined to be the result of arson. She stated that when she spoke to defendant she informed him of his *Miranda* rights and explained to him that she was not his attorney. According to Mondello, defendant said he understood his rights and that he was willing to discuss the fire with her. Mondello stated that defendant then told her "in his own words" his version of what happened the night of the fire and she transcribed his confession into a three-page handwritten statement. She testified that she read the statement to defendant and made several corrections which defendant requested. She and defendant initialed the corrections and defendant signed the bottom of each page. She stated that he never asked for an attorney or indicated that

he wanted to stop making a statement. She also testified that defendant was not threatened, physically abused, or promised leniency if he would confess to the crime.

Defendant's testimony was consistent with that of the officers up until the conclusion of the polygraph test. He stated that he submitted to the polygraph examination voluntarily. Defendant testified, however, that after the test was completed, Torvar told him he "did fine" and then Torvar left the room. According to defendant, Torvar returned with Urban and another officer. Defendant stated that he asked if he could leave and was told he could not. He denied that he ever made a statement in the polygraph room or that either Torvar or Urban ever informed him of his *Miranda* rights. He testified that, when Torvar and Urban were both outside of the room, the third officer convinced him to confess to the crime. According to defendant, the officer told him that if he confessed then he would only be charged with criminal damage to property instead of arson. Defendant said that the officer told him that, since no one was hurt, if he would agree to make restitution and help with repairs "that would be the end of it." He stated that he agreed and when the assistant State's Attorney arrived he recited a fabricated confession to her.

The trial judge denied defendant's motions to quash his arrest and suppress his statements. She concluded that defendant was informed of his *Miranda* rights numerous times, had the capacity to understand those rights, and voluntarily waived them. She also determined that the defendant's confession was not the product of physical or psychological coercion and that defendant was not made any promises in exchange for his confession. Finally, the judge ruled that "[t]here was certainly sufficient information to the police officer to meet the standard of probable cause to arrest." In making her ruling, the judge expressly found that the polygraph results were inadmissible and would not be considered in determining whether probable cause to arrest defendant existed. In denying defendant's motion to quash his arrest and suppress his confession, the judge reasoned that, based upon Urban's "conversations, his investigations, his information that he developed from other witnesses" and "[t]he fact that the defendant hit and kicked and beaten [sic] this woman," there was clearly sufficient information within Urban's knowledge to establish probable cause to arrest defendant. After the judge made her ruling, defense counsel asked her to clarify upon what basis had she found that there was probable cause to arrest. The following discussion was then held between the trial judge and defense counsel:

"MR. STERNBERG [Defense counsel]: Is the Court finding that Officer Urban had probable cause to arrest because of his knowledge of the battery or the arson or both?

THE COURT: Certainly, the officer had probable cause to arrest him based upon the battery. There is no doubt of that.

MR. STERNBERG: Because I—

THE COURT: In fact, the testimony that the officer had information the defendant had beaten and kicked this woman, he certainly had the right to indicate to the defendant that he was under arrest, and then advise him of his rights, which is, in fact, what the officer said that he did.

MR. STERNBERG: Okay.

THE COURT: Additionally, he did have this additional information.

MR. STERNBERG: Right. Is the finding that he had probable cause to arrest for the arson as well? He found probable cause on the basis of the battery, my question is—next question is, you also finding that he—he had probable cause on the basis to arrest for the—for the arson as well?

THE COURT: I don't think I have to meet that, counsel.

MR. STERNBERG: I'm sorry?

THE COURT: I don't think I have to meet that question. I've found that the officer had probable cause to place the defendant under arrest based on his conversations with Mary Martinez [sic] and also James Martinez [sic]. And that then the next step that took place, he advised the defendant of his rights and the defendant made a statement admitting to the arson.

MR. STERNBERG: If I may only point out to the Court, I believe that the officer testified that he didn't know that a summons—whether a summons had issued or not. And that I believe, he testified that he—that he wasn't dealing with the battery at the time he called the defendant in, and that wasn't the case that—that he was dealing with at that time.

THE COURT: The officer said, he believed that he put battery charges on the defendant. I have made the finding, sir, that—

MR. STERNBERG: Very well.

THE COURT: —that the officer had probable cause to arrest and, therefore, when he had the defendant in custody as was his obligation, advised him of his constitutional rights, at which point the defendant made a statement."

At trial, during a short recess after jury selection, defendant left the courtroom and did not return. No one was able to locate defendant by the next day, so the trial commenced *in absentia*. Mary and James both testified at trial. Their testimony was consistent with what Urban, at the hearing on the pretrial motions, had stated that they had told him. Mondello's testimony at trial was also consistent with her testimony at the pretrial hearing. A resident of the building and the apartment manager testified that they had seen defendant at the apartment building several times while he was in a relationship with Mary.

Urban's testimony concerned his investigation and his conclusion that the fire was the result of arson. He also related defendant's confession to the jury. According to Urban, defendant told him that he had had a fight with Mary and, when she called the police, he left. Urban stated that defendant said that later he called Mary, but when no one answered he realized nobody was there. Urban testified that defendant described how he retrieved gasoline from a container in his car, poured it into a styrofoam cup, returned to Mary's apartment, "kicked in the front door and set the fires in the apartment."

At the jury instruction conference, the State initially tendered two verdict forms: "guilty of aggravated arson" and "not guilty of aggravated arson." Over defendant's objection, however, the judge agreed to give the jury an instruction on the lesser-included offense of arson. As a result, the State withdrew the verdict form of "not guilty of aggravated arson" and proposed two different forms. There was no objection from defense counsel. Consequently, the judge agreed to give the jury the following three verdict forms: "guilty of aggravated arson," "guilty of arson," and "not guilty of any arson related offense." During its admonishment to the jury, however, the judge told the jury that the three verdict forms it would receive would be "guilty of aggravated arson," "guilty of arson," and "not guilty of aggravated arson." Defense counsel did not object in court or in his written post-trial motion to this incorrect admonishment or to the judge's failure to mention the "not guilty of any arson related offense" verdict form. The common law record reveals, however, that all four of the above-mentioned verdict forms had the notation "given" in the bottom margin. After deliberations, the jury returned a verdict of "guilty of aggravated arson."

On December 27, 1989, defendant was sentenced *in absentia*. The judge commented on the "somewhat sketchy" presentence investigation report she had received. The prosecutor then noticed that the second page which indicated several felony convictions was actually

another person's "rap sheet" and not defendant's. The judge commented that the report was "poorly prepared" and she would "certainly not rely obviously on this incorrect information." In mitigation, she considered that defendant had "no substantial criminal history" and was a paramedic who had chosen to be of assistance to other people. In aggravation, however, she stated that she certainly had to take into consideration that he was a "very volatile person" who could be dangerous to other people when his emotions were out of control. She noted that, although he was angry at Mary, "he placed in perile [sic] a number of innocent people who had nothing to do with his relationship." Consequently, the judge sentenced defendant to 10 years in the Illinois Department of Corrections. Subsequently, defendant was located and taken into custody.

Defendant's first contention on appeal is that he was illegally arrested for arson without probable cause and, therefore, the trial judge erred in denying his motion to quash his arrest and suppress his confession on the grounds that probable cause existed to arrest him for battery. He argues that an unconstitutional arrest for one crime cannot subsequently be validated on the theory that probable cause existed for a different offense not contemplated by the police at the time of the arrest. The State, on the other hand, asserts that the record establishes that the police had probable cause to arrest defendant for arson. Alternatively, the State maintains that defendant's confession was not the result of an exploitation of the allegedly improper arrest and, therefore, not subject to suppression.

■ It is undisputed that defendant was arrested for arson and not battery. Urban was with the police bomb and arson unit and was assigned to investigate the fire. After several unsuccessful attempts at locating defendant, Urban left a message with defendant's mother that he needed to speak with defendant "in regards to a fire that occurred at Mary Montanez's apartment." When he finally spoke with defendant, they spoke about the fire and defendant agreed to take a lie detector test to prove he did not cause the fire. After failing "every question given regarding the fire," Urban placed defendant under arrest. According to Urban, it was at this point that defendant admitted to setting Mary's apartment on fire.

It also is clear from the record that the trial judge refused to decide whether the police had probable cause to arrest defendant for arson because she believed it sufficient to determine that the officers had probable cause to arrest defendant for battery. However, the law is clear that a court, judging the propriety of an arrest after the fact, cannot validate an unconstitutional arrest on the theory that probable

cause existed for another offense which was not contemplated by the police at the time of the arrest. (*People v. Booker* (1991), 209 Ill. App. 3d 384, 394, 568 N.E.2d 211, 218; *People v. Nash* (1979), 78 Ill. App. 3d 172, 176, 397 N.E.2d 480, 483.) Therefore, we must initially agree with defendant that the trial judge erred in denying his motion to quash his arrest and suppress his confession on the ground that probable cause existed to arrest him for battery since battery was not contemplated by Urban when he arrested defendant.

After reviewing the record, however, we believe that Urban did possess the probable cause necessary to arrest defendant for arson. Probable cause exists when the totality of the facts and circumstances within the arresting officer's knowledge would be sufficient to warrant a reasonable and prudent person in believing that an offense had been committed and that defendant committed the offense. (*Booker*, 209 Ill. App. 3d at 393, 568 N.E.2d at 218; *Nash*, 78 Ill. App. 3d at 176, 397 N.E.2d at 483.) The evidence upon which probable cause is based need not be sufficient to convict, but must be more than a hunch or mere suspicion. *People v. Reynolds* (1983), 94 Ill. 2d 160, 166, 445 N.E.2d 766, 769; *People v. Sledge* (1981), 92 Ill. App. 3d 1051, 1058, 416 N.E.2d 412, 417.

In this case, Urban had concluded that the fire in Mary's apartment was the result of arson. He also knew, from speaking with Mary, that defendant had entered her apartment building twice on the night of the fire without being "buzzed in" by Mary. Additionally, Mary had told Urban that defendant was drunk and extremely upset over their break up. She told Urban that defendant hit and kicked her several times. He also knew she was so fearful of defendant that she called her ex-husband to come and drive her and her daughter over to her mother's house, which was only three blocks away. Finally, Mary's ex-husband told Urban that he saw defendant in front of the apartment building when he arrived at approximately 12:30 a.m. Urban knew that this was approximately one-half hour before Mary's apartment was set on fire. We believe that these facts and circumstances surrounding the arson of Mary's apartment which were known to Urban when he arrested defendant were sufficient to support the belief in a reasonable and prudent person that defendant committed the arson. These facts alone may not have been enough to convict defendant, but they surely created more than a mere suspicion or hunch that defendant was the offender. Consequently, defendant's arrest for arson was supported by probable cause and his motion to suppress was properly denied.

The main case cited by defendant is *People v. Thomas* (1984), 123 Ill. App. 3d 857, 463 N.E.2d 832. In *Thomas*, defendant was arrested for the murder of his girl friend after her body was discovered in a forest preserve on October 21, 1978. The police investigators estimated that, from the degree of decomposition, the body had been there for three or four days. The victim was last seen alive on October 15 in defendant's company. Additionally, the police learned that defendant customarily visited the victim every day at her apartment and at work, but after she was considered missing he ceased this activity. The trial court found that defendant was arrested without probable cause. In refusing to disturb the trial court's determination as contrary to the manifest weight of the evidence, the *Thomas* court reasoned that although defendant was the last person to be seen with the victim, this was six days before the body was found whereas the estimated time of death was "three or four days earlier." The court also found that the fact that defendant discontinued his visits to the victim after he was told she was missing could not be considered either *"indicia* of guilt or innocence."

In this case, however, the police knew that defendant had assaulted Mary at her apartment just prior to the fire and was seen at the scene within one-half hour of the blaze. Additionally, unlike in *Thomas*, the trial judge refused to rule whether or not probable cause to arrest for arson existed. Therefore, in coming to our conclusion, there is no trial court determination to which we must pay deference under the "manifest weight of the evidence" standard.

Defendant's second contention is that he was denied a fair trial when the judge gave the jury the following three verdict forms: "not guilty of aggravated arson," "guilty of aggravated arson," and "guilty of arson." Defendant asserts that the failure to give the jury the option of acquitting him of arson had the effect of directing a verdict of guilty on that count. The State, on the other hand, argues that the instructions, taken as a whole, correctly announced the applicable legal principles. The State also maintains that defendant has waived this argument on appeal by failing to object at trial and in a post-trial motion.

The failure to object at trial to a perceived error and to raise that issue in a subsequent post-trial motion results in waiver of the question on review unless it can be considered "plain error." *(People v. Herrett* (1990), 137 Ill. 2d 195, 209, 561 N.E.2d 1, 7; *People v. Enoch* (1988), 122 Ill. 2d 176, 187, 522 N.E.2d 1124, 1130.) "A vital part of a trial is the reading of instructions by the court to the jury at the close of the oral arguments" *(People v. Wilson* (1976), 43 Ill. App. 3d 583,

585, 357 N.E.2d 81, 83) and a defendant is entitled to an instruction on his defense if supported by any evidence. (*People v. Brooks* (1989), 185 Ill. App. 3d 935, 942, 542 N.E.2d 64, 68.) Surely, a defendant who claims he is not guilty, as does defendant in this case, is entitled to have the jury given the option of acquitting him. We agree with those courts which have held that a trial judge's failure to give the jury an instruction which he agreed to give during the instruction conference is plain error. (*People v. Dailey* (1989), 188 Ill. App. 3d 683, 686, 544 N.E.2d 449, 451-52; *Wilson*, 43 Ill. App. 3d at 585, 357 N.E.2d at 83.) Consequently, defendant has not waived this issue.

The State argues that the instructions read to the jury, taken as a whole, accurately informed the jury of the applicable legal principles. In support of this argument, the State asserts that the judge actually recited the correct instruction to the jury just prior to giving the incorrect instructions. The State also points to the common law record which indicates that the jury was given four verdict forms which would have allowed them to find defendant guilty or not guilty of either offense.

Immediately prior to telling the jury it would receive three verdict forms which allowed for pronouncements of "guilty of aggravated arson," "not guilty of aggravated arson," and "guilty of arson," the trial judge stated:

"You are to decide based upon the evidence and arguments in this case whether to return a verdict of not guilty or a verdict of guilty of aggravated arson or a verdict of guilty of arson.

Accordingly you will be provided with three (3) verdict forms. Not guilty and guilty of aggravated arson. And guilty of arson.

From these 3 verdicts forms you should select the one that reflects your verdict and sign it as I have stated. Do not write on the other 2. Sign only one of these verdict forms."

It is arguable whether this instruction, as the State asserts, correctly informed the jury that it could find defendant not guilty of any arson-related offense. It is also a fair interpretation that the jury would only be considering defendant's guilt or innocence of aggravated arson. In light of the fact that the judge then immediately informed the jury that the three verdict forms it would receive would read "not guilty of aggravated arson," "guilty of aggravated arson," and "guilty of arson," we believe a reasonable jury would have interpreted this instruction consistently with the verdict forms it actually received. The question then is what verdict forms were actually handed to the jury.

The State asserts that the jury actually was given four verdict forms which allowed for verdicts of "guilty of aggravated arson," "not guilty of aggravated arson," "guilty of arson," and "not guilty of any arson related offense." The State points to the common law record which reveals that all four of the above verdict forms had the notation "given" in the bottom margin and, therefore, it argues that the jury received the correct instructions.

"A reviewing court is bound by the certified record of proceedings in the trial court, and the record is presumed to be correct unless it can be shown to be otherwise." (*People v. Bland* (1992), 228 Ill. App. 3d 1080, 1086, 593 N.E.2d 639, 644; see also *People v. Allen* (1985), 109 Ill. 2d 177, 184, 486 N.E.2d 873, 875; *People v. Vincent* (1988), 165 Ill. App. 3d 1023, 1028, 520 N.E.2d 913, 918.) In both *Bland* and *Vincent*, the certified records indicated that the trial judge read incorrect instructions to the jury, but the common law records included the correct instructions. The appellate court found that the mere fact that correct instructions were found in the record, which included instructions both given and refused, is insufficient to prove that the jury was actually given these instructions.

In this case, the State does not offer any evidence to prove nor, for that matter, does it even argue that the certified record of the reading of the instructions was inaccurate. As is shown by the above-cited cases, the mere fact that correct instructions are found in the court file is insufficient to prove that the jury was so instructed. Therefore, we are bound by the certified report of proceedings and must proceed under the assumption that the jury received the incorrect instructions which provided for verdicts of "not guilty of aggravated arson," "guilty of aggravated arson," and "guilty of arson."

In order for an accused to be convicted of a criminal offense, the jury must find that each element of the offense has been proven beyond a reasonable doubt. In this case, the jury was asked to determine the defendant's fate and provided with verdict forms which did not allow it to find him not guilty of any arson-related offense. There is a reasonable probability that this error had the effect of removing from the jury's consideration the elements of arson and conveying the message to the jury that it was its duty only to determine whether the aggravating factor of the greater offense was present, thus directing a verdict of guilty on the charge. This seriously undermines the reliability of the verdict and cannot be considered harmless error. The defendant, therefore, was denied his right to a fair trial.

Although we reverse and remand for a new trial on this issue, we will address defendant's remaining assertions of error due to the possibility of their recurrence.

Defendant's third contention on appeal is that the case must be remanded for resentencing because the presentence report considered by the court did not comply with mandatory statutory requirements and was both incomplete and inaccurate. The State asserts that defendant has waived this argument by failing to object during trial or in a post-trial motion. Alternatively, the State maintains that remandment for resentencing is not warranted because the court was aware of all required information at the time of sentencing.

The trial judge sentenced defendant, *in absentia*, after hearing arguments from counsel and considering a presentence report which had been prepared without defendant's cooperation. Prior to sentencing defendant, the prosecutor had brought to the court's attention several errors in the report. It was noted that the presentence report included not only defendant's "rap sheet," but also another person's more extensive sheet which indicated several felony convictions. The prosecutor then requested that "the record reflect there is a correction made to the PSI." The trial judge commented that the report was "somewhat sketchy" and "poorly prepared" and stated that she would "certainly not rely obviously on this incorrect information." Additionally, the report was incomplete in that, other than defendant's gender, race, and birth date, it only contained defendant's criminal history and probation status. Defense counsel did not make any objections to the use of this report or to the incomplete nature of the report.

Section 5—3—1 of the Unified Code of Corrections provides in pertinent part:

> "A defendant shall not be sentenced for a felony before a written presentence report of investigation is presented to and considered by the court.
>
> However, the court need not order a presentence report of investigation where both parties agree to ·the imposition of a specific sentence." (Ill. Rev. Stat. 1991, ch. 38, par. 1005—3—1 (now 730 ILCS 5/5—3—1 (West 1992)).)

The Illinois Supreme Court has interpreted this statute to mean that a presentence investigation and written report are mandatory legislative requirements which cannot be waived unless both the State and defendant agree to the imposition of a specific sentence. (*People v. Youngbey* (1980), 82 Ill. 2d 556, 561, 413 N.E.2d 416, 419.) Since this requirement is not a personal right of the defendant (*Youngbey*, 82 Ill.

2d at 565, 413 N.E.2d at 421), a defendant who is tried and convicted *in absentia* cannot be considered to have waived the requirement by his voluntary absence from the trial. (*People v. Lynch* (1984), 122 Ill. App. 3d 121, 124, 460 N.E.2d 817, 819.) Additionally, "substantial compliance" with the statute through the inclusion in the record of all the information which would have been in the report does not excuse the express statutory requirement of a *written* presentence report. (*People v. Harris* (1985), 105 Ill. 2d 290, 303, 473 N.E.2d 1291, 1297; *Lynch*, 122 Ill. App. 3d at 124, 460 N.E.2d at 819.) Moreover, the trial judge cannot order a "partial presentence report" (*People v. Andrus* (1991), 210 Ill. App. 3d 878, 882, 568 N.E.2d 1388, 1391) and "[i]t is the duty of the probation officer to prepare a presentence report consistent with the directives of the statute." *People v. Meeks* (1980), 81 Ill. 2d 524, 533, 411 N.E.2d 9, 14.

However, if the trial judge does consider a presentence report, any objection to a deficiency in that report is deemed waived by a defendant's failure to object. (*Meeks*, 81 Ill. 2d at 533, 411 N.E.2d at 14; *Andrus*, 210 Ill. App. 3d at 881-82, 568 N.E.2d at 1391; *People v. Collins* (1982), 109 Ill. App. 3d 1076, 1080, 441 N.E.2d 935, 938.) Additionally, a defendant is precluded from objecting to the incomplete nature of the report when the deficiency is due to his own absence or refusal to cooperate. *People v. Gomez* (1986), 141 Ill. App. 3d 935, 942, 491 N.E.2d 68, 73-74.

■ In the instant case, the trial judge considered an admittedly inaccurate and incomplete presentence report. Although the inaccuracies were brought to the judge's attention and she did not consider the incorrect information, it nonetheless was error for her to sentence defendant based on such an incomplete presentence report. We note, however, that the incomplete nature of the report was due, to a great extent, to defendant's absence. Moreover, as the *Meeks* court stated:

> "It is the duty of the parties *** to bring to the attention of the sentencing authority any alleged deficiency or inaccuracy in the presentence report. The requirement that the trial judge consider the presentence report was complied with in the present case; any objections to the sufficiency of the report must first be presented to the trial court." (*Meeks*, 81 Ill. 2d at 533, 411 N.E.2d at 14.)

Since defendant failed to object to the deficient nature of the presentence report, he has waived review of this issue.

Defendant's final contention is that, during sentencing, the trial judge improperly considered in aggravation that his conduct threatened harm to others when that fact is implicit in the offense for which

he was convicted. The State argues that the judge did not consider improper factors and, even if she did, the error was not of such magnitude to necessitate remandment for resentencing. The State also asserts that defendant has waived this issue by failing to object in court and in a post-trial motion.

■ Defendant has not waived review of this issue. When a trial judge relies upon an improper aggravating factor in sentencing a defendant to a term of imprisonment, the defendant's "fundamental right to liberty" is unjustly affected and his right not to be sentenced based upon improper factors is violated. (*People v. Martin* (1988), 119 Ill. 2d 453, 458, 519 N.E.2d 884, 886.) Additionally, it is impractical to expect counsel to interrupt the trial judge while he is imposing sentence in order to "point out that he was considering wrong factors in aggravation." (*People v. Saldivar* (1986), 113 Ill. 2d 256, 266, 497 N.E.2d 1138, 1142.) Thus, if a defendant asserts on appeal that a trial judge considered erroneous aggravating factors in determining the appropriate sentence of imprisonment, the issue will be reviewed under the "plain error" doctrine. See *Martin*, 119 Ill. 2d at 459, 519 N.E.2d at 887; *Saldivar*, 113 Ill. 2d at 266, 497 N.E.2d at 1142.

In sentencing defendant, the judge stated:

"I think this is a man who has very many talents and has much to offer and over most of his life has been a citizen who has been abiding by the law and in fact his role as a paramedic is obviously very persuasive, the fact that he chose that type of life and to be of service to other people in a very dangerous situation certainly indicates one side of his personality, the fact that he has no substantial criminal history.

But then we have the other side that we saw both in the courtroom when he left the courtroom and the facts that were illustrated at trial shows this is a man who can be dangerous. When his emotions are out of control, he can be very dangerous. And the facts in this case, the fact that while he may have been angry at his girlfriend, he placed in perile [*sic*] a number of innocent people who had nothing to do with his relationship.

Certainly all of those issues also have to be taken into consideration. I am going to sentence him to 10 years in the Illinois Department of Corrections."

In imposing sentence upon a defendant, the trial judge may not consider in aggravation any fact implicit in the underlying offense for which defendant was convicted. (See *People v. White* (1986), 114 Ill. 2d 61, 66, 499 N.E.2d 467, 469; *People v. Conover* (1981), 84 Ill. 2d 400, 404, 419 N.E.2d 906, 908; *People v. Gonzalez* (1993), 243 Ill.

App. 3d 238, 244.) The rationale behind forbidding this practice is that the legislature obviously has already considered such a fact when setting the range of penalties and "it would be improper to consider it once again as a justification for imposing a greater penalty." (*Martin*, 119 Ill. 2d at 460, 519 N.E.2d at 887.) However, although "a specific act inherent in a charged offense [can] not be considered to aggravate a sentence, a judge may still consider 'the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant.' " (*People v. Hunter* (1981), 101 Ill. App. 3d 692, 694, 428 N.E.2d 666, 668, quoting *People v. Tolliver* (1981), 98 Ill. App. 3d 116, 117-18, 424 N.E.2d 44, 45.) In order to convict a defendant of "aggravated arson," the State must prove that, in the course of committing the arson, defendant must have known or reasonably should have known that one or more persons were present in the structure he was setting on fire. Ill. Rev. Stat. 1991, ch. 38, par. 20—1.1(a)(1) (now 720 ILCS 5/20—1.1(a)(1) (West 1992)).

Defendant supports his contention that the judge improperly relied upon a factor inherent in the offense when imposing his sentence with our recent decision in the *Gonzalez* case. The State cites the *Hunter* case in support of its assertion that the judge did not improperly rely in aggravation upon an act inherent in the offense, but rather properly considered the "nature and extent" of defendant's conduct. We believe *Gonzalez* is directly on point with the facts of this case.

In *Gonzalez*, when sentencing defendant, the trial judge stated:

"Mr. Gonzalez, this is a very serious matter. The charge of aggravated arson is, I believe, one of the most serious types of crimes, because the person who begins this kind of violence loses control over it and endangers themselves and the other people beyond the person that the violence was aimed towards.

There were a number of people in that building, who had nothing to do with your dispute with the lady you felt owed you money, and when you acted in the way you did, you threatened all of their lives as well." (*Gonzalez*, 243 Ill. App. 3d at 244.)

In *Gonzalez*, we held that the judge improperly considered in aggravation a fact implicit in the underlying charge and, pursuant to Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)), we reduced defendant's sentence.

In the *Gonzalez* case, we also distinguished *Hunter*. In *Hunter*, defendant owned a duplex and set fire to the half in which he lived in order to collect the insurance money after he became frustrated with his inability to find a buyer. During the sentencing after he was con-

victed of aggravated arson, the trial court referred to the fact that defendant's conduct threatened serious harm to the family which lived in the other half of the duplex. On appeal, the *Hunter* court recognized that the fact that persons were exposed to serious harm is implicit in the charge and cannot be considered in aggravation, but stated that "he [the trial judge] did not necessarily depend on that fact to impose a sentence greater than the minimum." (*Hunter*, 101 Ill. App. 3d at 694-95.) The court found that the trial judge did not base his decision on this improper factor, but on numerous other legitimate factors which constituted the "nature and circumstances" of the crime. However, as we stated in *Gonzalez*:

> "In the present case, the trial judge did not determine defendant's sentence based on nature and extent of the offense committed by the defendant, but rather relied on the fact that defendant's actions threatened the lives of others. Unlike *Hunter*, the trial court here improperly relied on this aggravating factor in sentencing defendant." *Gonzalez*, 243 Ill. App. 3d at 245.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

MANNING, P.J., and CAMPBELL, J., concur.