NOTICE
Decision filed 09/23/14. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2014 IL App (5th) 120518

NO. 5-12-0518

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Shelby County. |
| | ) | |
| v. | ) | No. 12-CF-3 |
| | ) | |
| WAYNE NEWLIN, | ) | Honorable |
| | ) | Michael P. Kiley, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Justices Chapman and Stewart concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Wayne Newlin, was convicted by a jury of first-degree murder under a theory of accountability (720 ILCS 5/9-1(a) (West 2010)).  The circuit court of Shelby County sentenced defendant to 55 years in the Department of Corrections.  On appeal, defendant contends he is entitled to a new sentencing hearing or a reduction of his sentence because the circuit court erroneously considered that his conduct caused serious harm, a factor inherent in the offense of first-degree murder.  The State attempts to raise an issue concerning the imposition of fines, but failed to cross-appeal.  For the following reasons, we affirm.

1

¶ 2                                                 FACTS

¶ 3      Defendant was charged by indictment with first-degree murder under a theory of accountability.  The indictment alleged that defendant committed the offense in that he, "or one for whose conduct he is accountable," shot the victim, Jeremy Morgan, in the chest with a 12-gauge shotgun.  The case was tried before a jury during which the following evidence was adduced.

¶ 4      Defendant was the victim's ex-stepfather.  Defendant lived with the victim and Heather Thomas in a trailer.  Defendant believed he might have a chance to be romantically involved with Thomas, but for the victim's presence.  Shortly before Christmas 2011, defendant talked to Michael Pease about his frustration with the victim and told Pease he wanted to get rid of the victim.  Pease worked for defendant as a mechanic.  Pease agreed to kill the victim, but said he did not have a gun.  On December 23, 2011, defendant gave Pease a 12-gauge shotgun and some shells and told Pease he should kill the victim on December 25, as he and Thomas would be gone at a Christmas party.

¶ 5      When Pease arrived at the trailer on Christmas day, the victim was not there. Pease called defendant and asked him what to do.  According to Pease, defendant told him the door was open and to go in and steal the victim's property in order to "piss [the victim] off."  Pease then took some of the victim's property and crushed a dog cage after releasing the dog from it.  Defendant directed Pease to let the dog out because the dog served as an attachment between the victim and Thomas.  As Pease was getting into his vehicle to leave the property on which the trailer was located, the victim and his brother,

2

Jason, arrived. The victim told Pease to get off his property. Pease left.

¶ 6    On December 27, 2011, defendant contacted Pease and said he wanted to talk to him. Defendant picked up Pease at his mother's house because defendant did not want to have any conversations over the phone about killing the victim. Defendant wanted Pease to come up with a plan to kill the victim. Defendant told Pease there was a well at an abandoned farm near the trailer in which he could dump the victim's body. Defendant said he had plastic at work to give Pease so Pease could wrap the victim's body in it and he would buy rope to tie the plastic.

¶ 7    Defendant also told Pease he had a tractor with a bucket in which the victim's body could be placed and carried to the well. Defendant informed Pease he would take care of removing the cap on the well and provide plastic gloves to keep Pease's fingerprints off everything. Pease also testified it was defendant's idea to use cinderblocks to sink the victim's body in the well. Pease apprised defendant he would carry out the plan to kill the victim on December 29, 2011.

¶ 8    In order to have an alibi, defendant took Thomas to Pease's mother's house during the time Pease was going to kill the victim. Pease lived with his mother and his mother considered Thomas to be a stepdaughter. As Pease was leaving his mother's house on December 29, 2011, to commit the murder, defendant and Thomas arrived. Pease testified that he hid behind a door so Thomas would not see him. Defendant stepped outside with Pease and Pease asked for gas money because his mother's van was nearly out of gas and would not make the trip to the trailer and back to the house. Defendant gave Pease $20 for gas.

3

¶ 9    Pease drove the van to the gas station and got gas, retrieved the shotgun and shells from where he stashed them, and then went to the abandoned farm with the well and parked the van. He walked to the trailer where he encountered the victim. The victim ended up calling 911. A recording of the 911 call was played for the jury. Pease panicked and shot the victim three times while the victim was on the telephone with police.

¶ 10   The tractor, which was not previously in working condition, was working on December 29, 2011, as defendant promised. It was also equipped with plastic and rope as defendant promised. Pease retrieved the keys to the tractor from under the seat where defendant told him they would be located. Pease put the victim's body in the bucket of the tractor and started driving toward the farm.

¶ 11   While driving toward the farm, Pease passed police cars that were responding to the 911 call. Pease panicked again, stopped the tractor at the farm, shut off the engine, and got into his van and left without disposing of the victim's body in the well. Pease fled the scene, but later confessed. A deputy discovered the victim's body inside the bucket attachment of the tractor. The deputy estimated the farm on which the tractor was found was two or three tenths of a mile from the trailer where victim resided. The pathologist who conducted an autopsy on the victim testified that the victim died of multiple gunshot wounds.

¶ 12   Pease testified that he pleaded guilty to first-degree murder and received a 45-year sentence. Pease identified People's Exhibit F as the shotgun that defendant provided him and the shotgun he used to kill the victim. The police retrieved the gun from a lake

4

where he had thrown it after the murder. Pease directed the police to the lake. A firearms expert testified that three spent shotgun shells recovered from the abandoned farm were fired from that shotgun.

¶ 13  Pease also testified that after the murder, he asked defendant for $40 for gas and cigarettes. Defendant provided him with $40. Pease also believed that in return for killing the victim, defendant was going to pay off fines amounting to approximately $2,000, which Pease amassed in Christian County, give him an old truck, and give him $200 to $300 in spending money.

¶ 14  After hearing all the evidence, the jury convicted defendant of first-degree murder. A sentencing hearing was conducted during which the trial court noted that it considered the presentence investigation report and addendum. The State noted that the minimum sentence for this crime was 35 years and recommended defendant receive a 65-year sentence. Defense counsel noted defendant's age of 53 and that given his age and ill health, the court should sentence defendant to the minimum.

¶ 15  Defendant's brother testified in mitigation that defendant was generous to a fault, not a violent or evil person, and this was simply a one-time incident in which defendant strayed off course. Defendant read a short statement in which he concluded, "I'm sorry things turned out the way they did in this situation." The trial court heard victim impact statements from the victim's wife from whom he was separated at the time of his death and the victim's father.

¶ 16  Prior to imposing a sentence, the trial court noted that given defendant's age whatever sentence was imposed would most likely be a life sentence and noted that if it

5

followed the State's recommendation, defendant would not be released from jail until he was 118 years of age. The trial court further noted that defendant had virtually no history of criminality, albeit a speeding ticket, and that his employer gave him a glowing recommendation. The trial judge observed that in his 35 years of practicing law as a defense attorney, prosecutor, and judge, he "never heard anything so chilling as" the 911 tape introduced into evidence, and that while Michael Pease was the man who pulled the trigger, it was clear that Pease was acting under defendant's control. The trial court specifically stated that it found defendant to be primarily responsible for the murder with Pease being "a soldier acting and doing whatever [defendant] planted in his head."

¶ 17    The trial court found the fact that defendant had no prior history of delinquency or criminal activity to be a factor in mitigation. The trial court noted the following factors in aggravation:

> "That [defendant's] conduct caused serious harm to another. That my sentence is necessary to deter others. And pursuant to 720 ILCS 5/9-1(b)(11), that this act was committed in a cold, calculated, premeditated manner pursuant to a preconceived plan, and that [defendant's] conduct, taking a human life by unlawful means, was all pursuant to that premeditated plan. Something that could have been, on reflection, could have been terminated easily enough."

The trial court found that because defendant was primarily responsible for the murder, a sentence greater than the minimum was required. Ultimately, the trial court sentenced defendant to 55 years in the Department of Corrections–40 years for first-degree murder, plus an additional 15 years because a gun was used (see 730 ILCS 5/5-8-1(a)(1)(d)(i)

6

(West 2010)), plus court costs and 3 years' mandatory supervised release. Defendant now appeals his sentence.

¶ 18                                    ANALYSIS

¶ 19                                  I. Sentence

¶ 20    The only issue raised by defendant on appeal is whether the trial court erred in sentencing defendant. Defendant contends he is entitled to either a new sentencing hearing or a reduction in his sentence because the trial court erroneously considered that defendant's conduct caused serious harm, a factor inherent in the offense of first-degree murder. The State responds that defendant forfeited the issue by failing to object at trial or include it in a written motion to reconsider sentence, and even assuming *arguendo* the issue is not waived, the trial court's comment concerning harm was isolated and the trial court did not place any weight on the victim's death as an aggravating factor. We agree with the State.

¶ 21    Generally, both a contemporaneous objection and a written postsentencing motion are required to preserve a sentencing error for review. *People v. Bannister*, 232 Ill. 2d 52, 76, 902 N.E.2d 571, 587 (2008). Defendant admits he failed to do either, but insists we can consider this issue under the plain error doctrine. However, in order to obtain relief under this rule, a defendant must first show that a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410 (2007). In the instant case, we find that no error occurred.

¶ 22    We are aware that in imposing a sentence, the trial court may not consider any fact implicit in the underlying offense for which the defendant was convicted. *People v.*

7

*James*, 255 Ill. App. 3d 516, 531, 626 N.E.2d 1337, 1349 (1993). However, a trial court may consider the nature and circumstances of an offense, including the nature and extent of each element of the offense as committed by the defendant. *James*, 255 Ill. App. 3d at 532, 626 N.E.2d at 1349. Even though the trial court noted that defendant's conduct caused serious harm to another as a factor in aggravation, we do not believe it is necessary to remand for resentencing, nor do we agree with defendant that his sentence should be reduced.

¶ 23 It is only necessary to remand a cause for resentencing where a reviewing court is unable to determine the weight given to an improperly considered factor. *People v. Beals*, 162 Ill. 2d 497, 509, 643 N.E.2d 789, 795 (1994). Where it can be determined from the record that the weight placed upon the improperly considered aggravating factor was insignificant and did not lead to a greater sentence, it is not necessary to remand. *Beals*, 162 Ill. 2d at 509-10, 643 N.E.2d at 796. In considering whether a sentence was properly imposed, a reviewing court should not focus on a few words or sentences of the trial court, but should consider the record as a whole. *People v. Ward*, 113 Ill. 2d 516, 526-27, 499 N.E.2d 422, 426 (1986).

¶ 24 In the instant case, the trial court listed the factors in mitigation and aggravation. The only factor in mitigation was defendant's lack of criminal history. In aggravation, the trial court noted defendant's action caused serious harm, but only made a passing reference to it. The trial court did not dwell on it. The trial court also noted that the sentence was necessary to deter others. However, from our review of the record it is clear that the trial court's main focus was on the premeditated nature of the plan to kill the

8

victim and the fact that defendant was the mastermind of that plan. While Michael Pease was the person who pulled the trigger, the trial court was certain he never would have done so without defendant's direction, and it was defendant who was the person primarily responsible for the victim's murder.

¶ 25 Defendant relies on *People v. Saldivar*, 113 Ill. 2d 256, 497 N.E.2d 1138 (1986), in support of his argument, but that case is distinguishable because the defendant was convicted of manslaughter and the record showed the trial court "focused primarily on the end result of the defendant's conduct, *i.e.*, the death of the victim, a factor which is implicit in the offense of voluntary manslaughter." *Saldivar*, 113 Ill. 2d at 272, 497 N.E.2d at 1144. Here, the trial court made one isolated commented, but focused primarily on the cold, calculated, and premeditated nature of the killing. The original plan called for killing the victim on Christmas day, but when that plan went awry, the actual murder took place four days later on December 29, 2011. The trial court correctly noted that the plan "could have been terminated easily enough" but defendant continued on his quest to rid himself of his perceived romantic rival.

¶ 26 Before imposing sentence here, the trial court noted that Michael Pease was sentenced to a term of 45 years in the Department of Corrections. The trial court expressed its belief that Pease was nothing more than defendant's lackey. Accordingly, it stands to reason that the trial court would impose a sentence on defendant greater than the sentence imposed on Pease. Defendant asked for the minimum of 35 years, while the State asked for 65 years. The trial court ultimately sentenced defendant to 55 years. Based upon the record before us, we find such sentence appropriate and also find that any

weight the trial court placed upon the fact that defendant's conduct caused serious harm was insignificant and did not result in a greater sentence.

¶ 27                                                     II. Fines

¶ 28    Without filing a cross-appeal, the State attempts to raise an issue concerning fines. The State asks us to vacate the fines imposed by the circuit clerk and remand to the trial court for the imposition of mandatory fines. We decline to do so.

¶ 29    The State acknowledges that the record on appeal does not make any mention of fines. The trial court's sentencing order merely states that defendant is sentenced to 55 years, "plus the court costs, plus three years of mandatory supervised release as mandated by statute." Nevertheless, the State asks us to consider the Shelby County circuit clerk's online records, which it asserts reveal additional assessments, some of which it claims to be fines. In essence, the State is asking us to supplement the record with information from the Internet without obtaining leave of this court to do so. Such practice is discouraged. See *People v. Hill*, 2014 IL App (3d) 120472, ¶ 21 n.1, 6 N.E.3d 860. Accordingly, the issue the State attempts to raise is not even supported by the record before us.

¶ 30    We are well aware of the "morass of fines, fees, and costs created by the legislature" and that calculating "these sums is a monumental feat which has commonly been accomplished by the clerk after the sentencing, in the clerk's office with the aid of computers." *People v. Folks*, 406 Ill. App. 3d 300, 308, 943 N.E.2d 1128, 1135 (2010). However, in a criminal case, the State may only appeal as allowed by Illinois Supreme Court Rule 604 (eff. Feb. 6, 2013). *People v. Johnson*, 113 Ill. App. 3d 367, 370, 447

N.E.2d 502, 504 (1983). Supreme Court Rule 604 is specific as to when the State may appeal, providing in pertinent part as follows:

"(a) Appeals by the State.

(1) *When State May Appeal.* In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114-1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence." Ill. S. Ct. R. 604(a)(1) (eff. Feb. 6, 2013).

Supreme Court Rule 604(a) does not include any language authorizing the State to appeal sentencing orders or the imposition of fines. Therefore, this court lacks jurisdiction to address the State's argument because the State is not authorized under Supreme Court Rule 604(a) to appeal the failure to impose a fine.

¶ 31 What the State is essentially trying to do in the instant case is to piggyback an appeal on defendant's appeal. We can find no authority for such practice and will not allow the State to raise the issue of fines in such a manner. Defendant raised only a single issue in this case, the length of his sentence. We decline to address the State's misguided attempt to unilaterally raise an issue concerning the fines imposed in the instant case.

¶ 32 For the foregoing reasons, the judgment of the circuit court of Shelby County is affirmed.

11

¶ 33    Affirmed.

2014 IL App (5th) 1205180

NO. 5-12-0518

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from the
                                        )    Circuit Court of
    Plaintiff-Appellee,               )    Shelby County.
                                        )
v.                                      )    No. 12-CF-3
                                        )
WAYNE NEWLIN,                           )    Honorable
                                        )    Michael P. Kiley,
    Defendant-Appellant.              )    Judge, presiding.
_____

**Opinion Filed:**        September 23, 2014
_____

**Justices:**        Honorable Richard P. Goldenhersh, J.

        Honorable Melissa A. Chapman, J., and
        Honorable Bruce D. Stewart, J.,
        Concur
_____

**Attorneys**    Michael J. Pelletier, State Appellate Defender, Jacqueline L. Bullard,
**for**    Deputy Defender, Duane E. Schuster, Assistant Appellate Defender,
**Appellant**    Office of the State Appellate Defender, Fourth Judicial District, 400
    West Monroe Street, Suite 303, P.O. Box 5240, Springfield, IL
    62705-5240
_____

**Attorneys**    Gina Vonderheide, Shelby County State's Attorney, Shelby County
**for**    Courthouse, Shelbyville, IL 62565; Patrick Delfino, Director, David
**Appellee**    J. Robinson, Deputy Director, Linda Susan McClain, Staff Attorney,
    State's Attorneys Appellate Prosecutor, 725 South Second Street,
    Springfield, IL 62704
_____