2019 IL App (2d) 170338-U
No. 2-17-0338
Order filed November 22, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 15-CF-116 |
| | ) | |
| TEVIN RAINEY, | ) | Honorable |
| | ) | Brian F. Telander, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRIDGES delivered the judgment of the court.
Justices Jorgensen and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err in sentencing defendant to 100 years' imprisonment for various offenses: it did not engage in a double enhancement by using the victim's age first to impose an extended term and then as a factor in aggravation within the extended range, and it did consider the mitigating evidence but reasonably deemed it outweighed by the aggravating factors.

¶ 2    Defendant, Tevin Rainey, appeals his sentence for aggravated criminal sexual assault with a firearm (720 ILCS 5/11-1.30(a)(8) (West 2014)), armed robbery with a firearm (*id.* § 18-2(a)(2)), home invasion with a firearm (*id.* § 19-6 (a)(3)), and aggravated kidnapping with a firearm (*id.* § 10-2(a)(6)) in connection with the rape, robbery, and kidnapping of N.T., an 87-year-old woman.

He contends that his sentence for aggravated criminal sexual assault with a firearm was the result of an improper double enhancement because the court used the victim's age as a factor in aggravation and that his overall sentence was excessive because the court did not take his age and background into consideration in mitigation. We affirm.

¶ 3                                     I. BACKGROUND

¶ 4      Evidence at the bench trial showed that N.T. lived alone. She awoke on January 1, 2015, to defendant shining a flashlight in her face. Defendant grabbed her arms, pulled down her pajama pants, and inserted his penis into her vagina. He then told her to get dressed while he stood behind her. N.T. gave defendant $20, but he told her to get her ATM card to get more money.

¶ 5      Pointing a gun at N.T., defendant had her drive them in her car to a bank, where she withdrew $300 to give to him. Defendant then had N.T. drive him to an apartment complex to drop him off. He threatened N.T. that he would seek her out and kill her if she called the police.

¶ 6      N.T. drove back to her apartment and called the police. She was bleeding and had extensive bruising on her arms and some bruising on her back. She was transported to the hospital, where she had surgery to repair a perineal laceration sustained during the sexual assault.

¶ 7      There was evidence that, shortly before the crime, defendant had entered a gas station near N.T.'s apartment, looked at condoms and gloves, and purchased cigars. The clerk gave him $2 change. $2 was recovered from between the passenger seat and center console of N.T.'s car. Video from the bank, DNA evidence, and various forms of circumstantial evidence strongly implicated defendant in the crime. The trial court found him guilty.

¶ 8      At sentencing, the State presented evidence that defendant had a lengthy criminal history. By his then age of 23, he had spent almost 9 years either on bond, on probation, in the Department of Corrections, on mandatory supervised release (MSR), or in custody awaiting trial. He

committed eight offenses while on juvenile probation, three while on MSR, and he committed the crimes against N.T. while on bond for a felony drug charge. He also had a history of offenses involving weapons and committed his first offense of unlawful transportation of a weapon when he was 14. He committed a second offense at age 17, then, a little over three months later, he participated in an armed robbery, resulting in a theft conviction. While under investigation for the robbery, defendant also committed an uncharged residential burglary during which the homeowners were in the home. Eight months before the crime against N.T., police found a loaded weapon next to drugs in defendant's car. He had a history of not taking responsibility for his crimes.

¶ 9    Inmates at the county jail had complained about defendant's behavior on multiple occasions. Defendant had been written up 20 times at the jail. Deputies had been threatened and battered by defendant and one incident resulted in a pending aggravated battery charge. The State presented evidence that defendant was not in need of money and participated in crimes for the thrill of it and that his crimes were violent for the sake of violence.

¶ 10    In mitigation, defendant presented evidence that his mother had been trampled to death in a nightclub incident when he was nine. His father was in prison at the time, and defendant was placed with extended family. Defendant's sister testified to defendant's difficulty dealing with his mother's death and to his good character. Defendant also presented letters from family, friends, and a former teacher describing his good character. Defendant had five children and was active in their lives. He had participated in some rehabilitation programs while in jail. The defense argued that, based on his young age, defendant had rehabilitative potential. Defendant spoke briefly and provided excuses for his behavior at the jail. He denied committing a variety of crimes, including the crime against N.T., although he stated that he was sorry for what happened to her.

¶ 11     The court merged a count of aggravated criminal sexual assault against a person 60 years of age or older (*id.* § 11-1.30(a)(5)) into the count of aggravated criminal sexual assault with a firearm.  The defense agreed that, on that conviction, defendant could be subject to an extended-term sentence based on the age of the victim without it being a double enhancement.

¶ 12     The trial court stated that it had considered all of the evidence, including the evidence in mitigation and defendant's background.  The court noted defendant's difficult upbringing.  In aggravation, the court stated that defendant's conduct caused harm and that he had a history of criminal activity, including being on bond for a felony at the time of the present crime.  The court noted that the victim was over the age of 60 and that the sentence had to deter others.  The court then stated:

> "In mitigation, unfortunately for the defendant, I don't find any of the mitigating factors apply.  There's certainly no grounds tending to excuse this conduct.  Defendant can't compensate the victim for what she went through.  There is a history of criminal activity, and I believe that the defendant's character is such that he is likely to commit another offense.
>
> It's hard to imagine for me, having done this for 40 years, a more frail or vulnerable victim than the lady that I saw here in the courtroom during the trial.  I have always believed that to care for the people who have cared for us, meaning the elderly, is certainly one of the most important things we can do as a people and as a society.  The elderly gave us everything, and to have a case where a senior citizen is treated like this is just shocking.
>
> I also think the test of a person and the test of a society is how they behave toward the elderly.  And your actions in this case were disgraceful.  They were repulsive.  It certainly shocks the conscience of the community, and I think based on the evidence, it

shows that you are not only totally without compassion, but I don't believe there is a shred of human decency in you to do this to an 87-year-old lady in her own home on New Year's Eve. There was no reason to commit a sexual assault like this."

¶ 13 For aggravated criminal sexual assault with a firearm, the court sentenced defendant to a 60-year extended term, which included a 15-year firearm enhancement. Defendant was sentenced to a consecutive 40-year term for armed robbery with a firearm and two concurrent 40-year terms for the remaining convictions. Defendant moved to reconsider, arguing that the sentence was excessive because the court failed to consider his youth and rehabilitative potential. He did not raise any issue of double enhancement. Noting that it had considered all of the factors in aggravation and mitigation, the court denied the motion. Defendant appeals.

¶ 14                                  II. ANALYSIS

¶ 15 Defendant first contends that the trial court improperly doubly enhanced his sentence for aggravated criminal sexual assault when it considered the victim's age to sentence him to an extended term and then also used her age as a factor in aggravation. Defendant concedes that he did not raise this issue in the trial court, but argues that plain error applies.

¶ 16 The plain-error doctrine allows a reviewing court to consider unpreserved error when a clear or obvious error occurred and (1) the evidence was so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) that error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The second scenario is potentially present here because, when a trial court considers erroneous aggravating factors in determining the appropriate sentence of imprisonment, the defendant's "fundamental right to liberty" is unjustly affected, which is seen

as a serious error. (Internal quotation marks omitted.) *People v. James*, 255 Ill. App. 3d 516, 531 (1993). However, for plain error to exist, we must first decide that an error actually occurred. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008).

¶ 17    Using the same factor twice to elevate the severity of the offense is referred to as a "double enhancement." *People v. Guevara*, 216 Ill. 2d 533, 545 (2005); *People v. Phelps*, 211 Ill. 2d 1, 12 (2004). "In the exercise of its duties, the legislature has the power to codify provisions which enhance a criminal offense (*e.g.*, misdemeanor to a felony) or enhance the applicable range of punishment (*e.g.*, extended term sentence or Class X sentencing)." *People v. Thomas*, 171 Ill. 2d 207, 223 (1996). This is known as a " 'single enhancement.' " *Id.* "Double enhancement occurs when a factor already used to enhance an offense or penalty is reused to subject a defendant to a further enhanced offense or penalty." *Id.*

> "For example, the same factor has been used to double enhance an offense (*People v. Haron*, 85 Ill. 2d 261 (1981) (offense enhanced from misdemeanor battery to felony aggravated battery and from aggravated battery to Class X felony armed violence based on use of a deadly weapon)), a punishment (*Fitzsimmons v. Norgle*, 104 Ill. 2d 369 (1984) (defendant transferred from juvenile to adult criminal court and probation precluded as potential punishment based on same prior conviction)), or some combination of the two (*People v. Hobbs*, 86 Ill. 2d 242 (1981) (misdemeanor theft enhanced to a felony theft and extended term sentence imposed based on same prior conviction))." *Id.* at 223-24.

¶ 18    "A double enhancement is not necessarily improper; the legislature may have intended such a result." *Id.* at 224. We review the matter *de novo*. *Phelps*, 211 Ill. 2d at 12.

¶ 19    Here, there was no double enhancement. In *Thomas*, our supreme court considered the proposition that the trial court could not use the defendant's two prior Class 2 felony convictions

both to qualify defendant for a Class X term and as an aggravating factor in sentencing the defendant beyond the minimum Class X term. *Thomas*, 171 Ill. 2d at 223. In rejecting that proposition, the *Thomas* court held that the " 'second use' " of the defendant's prior convictions, as an aggravating factor within the applicable Class X sentencing range, did not constitute an enhancement, because the discretionary act of fashioning a sentence tailored to the needs of society and the defendant is a requisite part of every individualized sentencing determination. *Id.* at 224-25. While the fact of the defendant's prior convictions determined the defendant's eligibility for a Class X sentence, the nature and circumstances of those prior convictions, along with other factors in aggravation and mitigation, determined the exact length of that sentence. *Id.* at 227-28.

¶ 20    Here, the same principles apply. Defendant was subject to an extended term because the victim was over 60. 720 ILCS 5/11-1.30 (West 2014); 730 ILCS 5/5-8-2 (West 2014). That was a single enhancement, but the applicable sentencing range was not enhanced further when the court considered the victim's age again as a factor in determining the exact length of the sentence within that enhanced range. To be sure, the victim's age could not be used to increase the applicable sentencing range for a second time, but the court was free to consider her age for purposes of imposing a sentence within the enhanced range. To hold otherwise would force the court to ignore factors relevant to the imposition of the sentence.

¶ 21    Defendant attempts to distinguish *Thomas* on the basis that the Class X sentencing in that case was mandatory, while here the imposition of an extended term based on the victim's age was discretionary. But even if we were to accept that distinction, a sentencing court may consider the degree of harm in an aggravated criminal sexual assault, including whether the victim was particularly young or particularly old, even if the victim's age was an element of the offense of which the defendant was convicted. *People v. Thurmond*, 317 Ill. App. 3d 1133, 1144 (2000); see

also *People v. Spicer*, 379 Ill. App. 3d 441, 468 (2007). For example, in *Thurmond*, the trial court did not err by considering that the victim was only 12 years old, because "there is a difference between being under age 18 and being significantly under age 18." *Thurmond*, 317 Ill. App. 3d at 1144. In *Spicer*, the trial court did not err by considering that the victim was over 75 years old, where the age required for aggravated criminal sexual assault was only 60. *Spicer*, 379 Ill. App. 3d at 468.

¶ 22    Here, the victim was 87 years of age, and the trial court discussed her age in the context of discussing defendant's likelihood of recidivism, the need for deterrence, and the protection of society. These were legitimate concerns that the court was entitled to consider when imposing the sentence. See *People v. Morrow*, 2014 IL App (2d) 130718, ¶ 19. Accordingly, the court did not err in addressing the victim's age when determining defendant's sentence.

¶ 23    Defendant next argues that his sentence was excessive because the trial court failed to consider his youth and rehabilitative potential.

¶ 24    "[T]he trial court is in the best position to fashion a sentence that strikes an appropriate balance between the goals of protecting society and rehabilitating the defendant." *People v. Risley*, 359 Ill. App. 3d 918, 920 (2005). Thus, we may not disturb a sentence within the applicable sentencing range unless the trial court abused its discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). A sentence is an abuse of discretion only if it is at great variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Id.* at 210. We may not substitute our judgment for that of the trial court merely because we might weigh the pertinent factors differently. *Id.* at 209.

¶ 25    In determining an appropriate sentence, relevant considerations include the nature of the crime, the protection of the public, deterrence, and punishment, as well as the defendant's

rehabilitative prospects. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The weight to be attributed to each factor in aggravation and mitigation depends upon the particular circumstances of the case. *Id.* "The seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). It is not mandatory that the trial court recite all of the factors before imposing a sentence. *Spicer*, 379 Ill. App. 3d at 469. It is also presumed that the court considered all of the factors unless the record indicates to the contrary. *Id.*

¶ 26    Here, defendant's conviction of aggravated criminal sexual assault with a firearm carried an extended-term sentencing range of 6 to 60 years' imprisonment. 720 ILCS 5/11-1.30(a)(8), (d)(1) (West 2014); 730 ILCS 5/5-5-3.2(b)(3)(ii), 5-4.5-25(a), 5-8-2 (West 2014). His armed-robbery conviction carried a sentencing range of 6 to 30 years' imprisonment. 720 ILCS 5/18-2(a)(2), (b) (West 2014); 730 ILCS 5/5-4.5-25(a) (West 2014). Because of the use of a firearm, he was subject to a 15-year sentence enhancement on each offense. 720 ILCS 5/11-1.30(a)(8), (d)(1), 18-2(a)(2), (b) (West 2014). Thus, defendant faced a maximum aggregate sentence of 120 years. His aggregate sentence of 100 years is thus presumed proper. See *People v. Branch*, 2018 IL App (1st) 150026, ¶ 35. In determining the sentence, the trial court expressly stated that it considered the mitigating circumstances, including defendant's background and difficult upbringing. The court then reasonably found that those factors were outweighed by defendant's extensive criminal history, his lack of remorse, and the seriousness of the crime. Yet the court still sentenced defendant to an aggregate of 20 years less than the maximum term. The court's sentence was not an abuse of discretion.

¶ 27                                    III. CONCLUSION

¶ 28    For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

¶ 29    Affirmed.