(No. 52525.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JUDY MEEKS, Appellee.

*Opinion filed September 15, 1980.*

William J. Scott, Attorney General, of Springfield, and Scott Wilzbach, State's Attorney, of Williamson (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Thomas R. Lamont and Keith P. Vanden Dooren, of Springfield, and Raymond F. Buckley, Jr., and Stephen J. Maassen, of Mt. Vernon, of the State's Attorneys Appellate Service Commission, of counsel), for the People.

John P. Coady, Public Defender, of Taylorville, for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, Judy Meeks, was convicted in a jury trial in the circuit court of Marion County of three counts of unlawful delivery of a controlled substance, phencyclidine (PCP) (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(d)), and was sentenced to three concurrent two-year terms of imprisonment. The appellate court determined that the sentencing hearing was not conducted in compliance with the directives of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1001—1—1 *et seq.*) and remanded the cause for resentencing. (75 Ill. App. 3d 357.) The appellate court specifically ruled that the presentence report did not comply with the requirements of section 5—3—1 of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—1) and further held that the trial judge considered improper and unreliable evidence in determining the appropriate sentence to impose. We allowed the State's petition for leave to appeal.

Following defendant's conviction, a sentencing hearing was held on July 12, 1978. Defendant elected to be sentenced under the recently amended Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1001—1—1 *et seq.*). A presentence report of investigation, compiled by defendant's probation officer, was submitted at the hearing and considered by the trial judge. By agreement of the parties, the trial judge appended to the presentence report a medical report and a handwritten statement by defendant directed to the trial judge and probation officer. In addition, evidence was presented in aggravation and mitigation of the offense.

The presentence report indicated that defendant was 23 years of age, the mother of a three-year-old son, 4½ months pregnant, and single. Defendant graduated from high school and had completed two semesters of college. In addition, she had completed a course of study in secretarial skills and a two-week course of study in law

enforcement. From 1974 through 1976 she was employed by the Black Labor Area Coalition Council, Carbondale, as a counselor. For six months prior to the sentencing hearing, defendant was employed by the Chicago Transit Authority as a bus driver. The report stated that her physical health was good and that she had never received psychiatric treatment. Defendant's prior criminal record consisted of a conviction and sentence of a fine for the offense of disorderly conduct in 1976 and conviction and a sentence of one year of probation for the offense of retail theft on Februay 24, 1977. The summary of the presentence investigation interview with defendant indicated that she did not desire a sentence of imprisonment and that she insisted that she was innocent of the offenses for which she had been convicted. Also interviewed by the probation officer was Fred Gibson, principal of Centralia High School. He stated that defendant was arrogant and belligerent while a student in high school and he doubted that her attitude had changed. In addition, the probation officer commented that defendant had not complied with the conditions of her probation for retail theft and stated that "Judy Meeks scoffed at probation and had very little appreciation for the opportunity." This report also contained information pertaining to defendant's religious preference, economic status, and family background.

In the letter presented to the trial judge and the probation officer, defendant stated that she had reconsidered the statements made in her presentence investigation interview. She indicated her desire to care for the future needs of her children, especially noting her son's need for her emotional and physical support. She stated that she wished to continue her employment with the Chicago Transit Authority and desired to further her education. She ended this letter with a plea to be sentenced to a period of probation.

Defendant called three witnesses at the sentencing

hearing. The first witness to testify was Sara Rogers, a mental health worker employed at the Murray Children Center in Centralia. She stated that she had known defendant for approximately eight years and that throughout this period they had frequently socialized. She stated that defendant had often cared for her children as a baby sitter and that she knew defendant to be a responsible mother. Mrs. Rogers did not contemplate that defendant might in some way become involved in criminal conduct, and she did not believe that defendant posed a threat to the community. On cross-examination, she stated that she was aware of defendant's prior convictions for disorderly conduct and retail theft and aware of the circumstances which led to the sentencing hearing.

Reverend Albert J. Ross, executive director of Black, Inc., Black Labor Area Coalition Council, was the next witness called by defendant. Reverend Ross testified that he had known defendant for five to six years and that he came to know her through her employment as a counselor for the Black Labor Area Coalition Council. It was his opinion that defendant was a responsible and conscientious person who possessed a moral and social consciousness that would prevent her from deliberately hurting herself or her family. He did not think that a sentence of imprisonment was necessary, nor did he believe that defendant was likely to engage in further criminal conduct. On cross-examination, Reverend Ross stated that he would have entertained the same opinion concerning defendant's involvement in further criminal conduct after her conviction for disorderly conduct in 1966, and her conviction for retail theft in 1977.

Doris Meeks, mother of defendant, also testified. She stated her concern for her daughter if she were imprisoned while pregnant and her concern for her grandson. She indicated that defendant had recently announced her plans

to marry. On cross-examination, she stated that she had cared for defendant's son for a two-month period while defendant was working in Chicago.

The State called Patsy Blackburn, previously employed at the Marion County probation office as a secretary, and James Griffith, defendant's probation officer. The offenses for which defendant was convicted in the present case occurred while defendant was serving her sentence of probation for retail theft. Blackburn and Griffith testified that defendant was uncooperative while serving this sentence of probation. Miss Blackburn stated that on one occasion defendant was belligerent, disrespectful, angry and intimidating during an interview. In addition, she stated that defendant provided her with either incorrect or false information. Griffith testified that defendant did not faithfully adhere to the conditions of her probation. He also observed that defendant had provided the office with inaccurate and false information on matters related to her probation. In addition, Griffith stated that he had contacted the Dwight Reformatory for Women and was informed that adequate services for pregnant women were provided by the institution. These services consisted of a medical staff at the prison throughout the day, physicians on call on a 24-hour basis, delivery services at the Community Hospital, and delivery performed by defendant's choice of physician. Griffith stated on cross-examination that if defendant were sentenced to a period of probation and she made a good-faith effort to comply with the conditions of her probation, he would assist her in any way possible.

Defendant declined the opportunity to make a statement on her own behalf. Defense counsel informed the court that defendant believed that she could add nothing further to the statement she submitted to the trial judge and probation officer.

After argument by the parties, the trial judge set forth the factors which he considered relevant to defendant's sentence. He noted at the outset that he was guided by the preamble to the Illinois Controlled Substances Act. The portions of the provision relied upon by the trial judge provide:

"Legistative intent. It is the intent of the General Assembly, recognizing the rising incidences in the abuse of drugs and other dangerous substances and its resultant damage to the peace, health, and welfare of the citizens of Illinois, to provide a system of control over the distribution and use of controlled substances which will more effectively: *** (3) penalize most heavily the illicit traffickers or profiteers of controlled substances, who propagate and perpetuate the abuse of such substances with reckless disregard for its consumptive consequences upon every element of society; *** . ***

It is not the intent of the General Assembly to treat the unlawful user or occasional petty distributor of controlled substances with the same severity as the large-scale, unlawful purveyors and traffickers of controlled substances. To this end, guidelines have been provided, along with a wide latitute in sentencing discretion, to enable the sentencing court to order penalties in each case which are appropriate for the purposes of this Act." (Ill. Rev. Stat. 1977, ch. 56½, par. 1100.)

The court emphasized that defendant had been convicted of three separately motivated felonies, that each delivery was made for compensation, that defendant had on each occasion represented that she could obtain cocaine from a source in Chicago, that the deliveries were made to a person unknown to defendant, and that based upon the above factors the trial judge was of the opinion that defendant was "no stranger to this type of activity." The court again noted the intent of the legislature to punish more severely those persons "that deal in the sales" of controlled substances. The trial judge then stated, based upon the evidence introduced at trial and in the sentencing hearing, that he believed that imprisonment was necessary

for the protection of the public and that probation would deprecate the seriousness of the offense and be inconsistent with the ends of justice. The trial judge also noted that the jury did not believe defendant's alibi defense, and stated further: "[T]he jury drew the only conclusion it had, that she was dealing a false hand." Having reached the determination that a sentence of probation was inappropriate, the trial judge noted defendant's medical condition, the hardship to defendant's son, and defendant's status as a youthful offender as factors in mitigation of the term of imprisonment to be imposed. The court then sentenced defendant to a term of two years' imprisonment for each offense, the minimum sentence of imprisonment provided by law, these terms to be served concurrently.

The State argues in this court that the judgment of the appellate court, ordering that defendant be resentenced, is in error. The State contends that the sentence imposed by the trial court complied with the relevant provisions of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1001—1—1 *et seq.*) and effectuated the legislative purpose of the Illinois Controlled Substances Act set forth above. Defendant, seeking to sustain the judgment of the appellate court, argues that the presentence report failed to comply with the requirements of section 5—3—1 of the Unified Code of Corrections in that it failed to include information related to special resources available in the community to assist defendant's rehabilitation, and she further argues that the trial judge disregarded appropriate information contained in the presentence report related to defendant's educational and employment history. In addition, defendant contends that the trial judge's reliance upon her representations to an agent of the Illinois Bureau of Investigation that she could supply cocaine, and his statements related to her perceived perjury, were improper factors for consideration and that the

cause should therefore be remanded for resentencing without consideration of these factors.

Section 5—3—1 of the Code provides that, in the absence of an agreement to a specific sentence, a defendant shall not be sentenced for a felony before a written presentence report is presented to and considered by the court (Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—1). The Code prescribes that the presentence report shall set forth:

"(1) the defendant's history of delinquency or criminality, physical and mental history and condition, family situation and background, economic status, education, occupation and personal habits;

(2) information about special resources within the community which might be available to assist the defendant's rehabilitation, including treatment centers, residential facilities, vocational training services, correctional manpower programs, employment opportunities, special educational programs, alcohol and drug abuse programming, psychiatric and marriage counseling, and other programs and facilities which could aid the defendant's successful reintegration into society;

(3) the effect the offense committed has had upon the victim or victims thereof, and any compensatory benefit that various sentencing alternatives would confer on such victim or victims;

(4) information concerning the defendant's status since arrest, including his record if released on his own recognizance, or the defendant's achievement record if released on a conditional pre-trial supervision program;

(5) when appropriate, a plan, based upon the personal, economic and social adjustment needs of the defendant, utilizing public and private community resources as an alternative to institutional sentencing; and

(6) any other matters that the investigatory officer deems relevant or the court directs to be included." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—2.)

Section 5—4—1 of the Code requires the sentencing authority to consider the presentence report in the sentencing hearing. Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1.

The appellate court, relying upon the aforementioned provisions, held that defendant's presentence report of investigation was insufficient in that it did not mention sentencing alternatives or programs within the community to assist in defendant's rehabilitation, and the court further stated that this error had not been waived by defendant's failure to raise this deficiency in the sentencing hearing. In addition, the appellate court noted that the trial judge did not discuss defendant's education and employment history in passing on the propriety of probation.

We agree with the appellate court that defendant's presentence report did not fully comply with the requirements of section 5—3—2(a)(2) of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—2(a)(2)) as it failed to comment upon resources within the community which may have been available to assist defendant's rehabilitation. We do not agree, however, that this error has been preserved for review. The record reveals that defense counsel acknowledged inspection of the presentence report at least three days prior to the sentencing hearing as prescribed by section 5—3—4 of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—4) and that defense counsel moved to correct various errors contained in the report at the sentencing hearing. It is the duty of the probation officer to prepare a presentence report consistent with the directives of the statute. It is the duty of the parties, however, to bring to the attention of the sentencing authority any alleged deficiency or inaccuracy in the presentence report. The requirement that the trial judge consider the presentence report was complied with in the present case; any objections to the sufficiency of the report must first be presented to the trial court.

Defendant's contention that the trial court ignored defendant's educational background and employment history in passing upon the propriety of a sentence of

probation is also not supported by the record. Initially, we agree with the appellate court that a fair reading of the record is necessary to determine whether the trial judge complied with the spirit as well as the letter of the requirement that he consider the presentence report. In conducting this review of the record, we find that defendant, defense counsel, and Reverend Ross all commented upon defendant's employment history, and defendant expressed her desire to continue her education, in addition to the information provided in the presentence report. The requirement that the trial judge set forth his reasons in the record for the particular sentence imposed does not obligate the judge to recite, and assign a value to, each fact presented in evidence at the sentencing hearing. We find that in the present case the trial judge considered the presentence report as required by section 5—4—1 of the Code (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1), that the views of defendant's witnesses were fully presented, and that the trial judge incorporated the information provided in his sentencing decision.

Defendant next contends that the trial court's consideration of her representations that she could supply cocaine was improper, as there was no indication that this purported ability was an actual ability. Defendant argues that the record contains no evidence of defendant actually selling cocaine to Agent Murray, the individual to whom she made this representation, or to any other individual. Defendant suggests that Agent Murray's repeated efforts to purchase cocaine from her, and his failure to do so, support the inference that she was unable to deliver this substance and that her statements should be considered unreliable.

The appellate court noted that although the logical inference is that one is able to do what one claims to be able to do, the record does not substantiate that conclusion in the present case. The appellate court concluded

that the statement was unreliable. The appellate court further noted that under the current statutory policy in favor of probation as a first alternative, sentencing courts are under a duty to scrutinize information presented at the sentencing hearing to determine if it can be utilized to justify probation, not deny it.

In determining the appropriate sentence to impose, the trial court is not bound by a rigid adherence to the rules of evidence but may search anywhere, within reasonable bounds, for facts which tend to aggravate or mitigate the offense. (*People v. Adkins* (1968), 41 Ill. 2d 297, 301). "Rules of evidence have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged. *** A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." (*Williams v. New York* (1948), 337 U.S. 241, 246-47, 93 L. Ed. 1337, 1342, 69 S. Ct. 1079, 1083.) This inquiry is limited only by the prerequisite that the information considered be accurate and reliable. *People v. Crews* (1967), 38 Ill. 2d 331, 337.

Our review of the record reveals that on three separate occasions, in the course of making a sale of a controlled substance to an agent of the Illinois Bureau of Investigation, defendant represented that she could deliver another controlled substance, cocaine, once she had made contact with her supplier. Defendant had demonstrated her ability to deliver a controlled substance, and the agent testified that defendant showed him a very large quantity of phencyclidine, an estimated two pounds, informing him that she could supply all that he desired. We are unwilling

to hold that defendant's statements, in the nature of admissions, are unreliable given the surrounding circumstances in which they were made.

Defendant's last contention is that the trial judge improperly considered defendant's perceived perjury at trial. Defendant concedes that a trial judge's consideration of perjury in the sentencing hearing does not violate Federal or State constitutional provisions. (See *United States v. Grayson* (1978), 438 U.S. 41, 57 L. Ed. 2d 582, 98 S. Ct. 2610; *People v. Jones* (1972), 52 Ill. 2d 247.) Defendant asserts, however, that Illinois law precludes the assessment of this factor in the sentencing hearing. We do not agree.

Defendant presented an alibi defense at trial. She testified that for a two-month period, the period which spanned the sales of these drugs, she was at all times in Chicago. Defendant's neighbor, a Centralia police officer, testified that at various times during this period he saw her in her home in Centralia. Agent Murray identified defendant as the individual who sold him the controlled substance, in Centralia. In addition, on impeachment, the State introduced an employment application signed by defendant. This application was submitted to a Centralia employer and dated during the period that defendant contended she was in Chicago. Defendant was unable to offer an explanation as to how the employer received this application.

As we stated in *People v. Jones*: "Realistically, it is impossible for a judge, in determining what sentence should be imposed, to erase from his mind the testimony of the defendant. The impact of that testimony upon the sentencing judge can hardly be said to be irrelevant to an appraisal of the defendant's character and his prospects for rehabilitation." (*People v. Jones* (1972), 52 Ill. 2d 247, 249-50.) We do not find in the present case that the trial judge's perception of perjury was unwarranted, nor that he improperly applied this factor to his sentencing decision.

In summary, we find no reason to disturb the sentence imposed on defendant. The record reveals that the trial judge carefully considered the evidence presented and balanced the factors presented in aggravation and mitigation of the offense. The record supports his conclusion that defendant was not an "occasional petty distributor of controlled substances" (Ill. Rev. Stat. 1977, ch. 56½, par. 1100), and the imposition of the minimum sentence of imprisonment demonstrates his sensitivity to the mitigating factors present in the case.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*