NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200501-U

NO. 4-20-0501

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 6, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| KEJUAN I. JENKINS, | ) | No. 20CF308 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, concluding the trial court did not abuse its discretion
in sentencing defendant to 10 years' imprisonment for aggravated robbery.

¶ 2     In March 2020, the State charged defendant, Kejuan I. Jenkins, with aggravated

robbery (720 ILCS 5/18-1(b)(1) (West 2020)).  In August 2020, a jury found defendant guilty of

aggravated robbery.  In September 2020, the trial court sentenced defendant to 10 years'

imprisonment.

¶ 3     Defendant appeals, arguing the trial court abused its discretion when it determined

no statutory mitigating factors were applicable, although the court was required to consider the

impending birth of defendant's first child.  For the following reasons, we affirm the trial court's

judgment.

¶ 4                                      I. BACKGROUND

¶ 5        In March 2020, the State charged defendant with aggravated robbery (720 ILCS 5/18-1(b)(1) (West 2020)).  In August 2020, a jury found defendant guilty of aggravated robbery.

¶ 6                              A. Sentencing Hearing

¶ 7        In September 2020, the trial court held a sentencing hearing and heard the following evidence and argument.

¶ 8                         1. *Presentence Investigation Report*

¶ 9        The presentence investigation (PSI) report included defendant's 2017 conviction for robbery, aggravated assault, and entering an automobile.  Defendant was convicted of the offenses in Georgia, and upon his release from the Georgia Department of Corrections in December 2019, defendant moved to Illinois to live with his mother.  The PSI report also included a juvenile adjudication for theft and two for felony burglary.

¶ 10        According to the PSI report, defendant's first child was due in September 2020. Defendant's father passed away in July 2020, and defendant indicated he loved his mother and his three siblings.  Defendant last attended ninth grade and had not completed the General Educational Development (GED) test.  Beginning in December 2019, defendant worked at McDonald's for approximately two months and for one day at American Water Company.  From February 2020 until his arrest in April 2020, defendant worked at FedEx Ground.

¶ 11        Defendant described his physical condition as "excellent" and his mental and emotional condition as "good."  In March 2020, defendant completed a substance abuse evaluation as a condition of parole, and no treatment was recommended.  However, defendant reported he occasionally consumed alcohol and smoked cannabis daily.  Defendant stated he took full responsibility for his actions. The PSI report indicated defendant was eligible for impact incarceration.

¶ 12                                    2. *Robert Sumption*

¶ 13          Robert Sumption, a detective with the Champaign Police Department, testified he was the lead detective in defendant's case. Sumption listened to multiple phone calls defendant made while in jail. According to Sumption, in an April 24, 2020, phone call, defendant discussed pulling a gun on the victim at the mall. Sumption testified the victim confirmed that defendant pulled a gun on him at the Market Place Mall. In another conversation, defendant learned David McClain had been arrested and defendant stated that if McClain made it to his pod in the jail "he would physically batter him." In an April 15, 2020, call, Jaheim Law told defendant he would give defendant his old gun once defendant was released. Sumption testified that, in two other April 2020 phone calls, defendant spoke about seeking retaliation using gun violence. Sumption testified, "He states that's [*sic*] he's going to get out and do hot s***."

¶ 14          According to Sumption, the victim called him in September 2020 because the victim was concerned about an interaction with defendant's brother. Defendant's brother attempted to convince the victim to reverse his statement and to state that he misidentified defendant. Defendant's brother also sent the victim a photograph of defendant in the county jail.

¶ 15          Sumption reviewed another report from a February 2020 incident involving defendant. According to Sumption, a bus driver "stated that a male passenger was exiting the bus at which time he engaged in an argument with her. He pulled a beige handgun from his waistband and threatened her by telling her that she was messing with the wrong person." Defendant was apprehended in an alley a short distance away from the bus. A beige handgun was found in the alley. Sumption acknowledged the beige handgun was a BB gun. While defendant was transported to jail, the officer had to call an additional unit to "apply a helmet" to defendant's head because he repeatedly hit his head on the squad car window. The officer also

had to hobble defendant's legs to prevent him from resisting. Sumption interviewed defendant about the incident, and defendant admitted he pulled the gun and stated he was upset with the bus driver because she would not give him directions.

¶ 16                                    3. *Latrice Jones*

¶ 17          Latrice Jones, defendant's mother, testified defendant grew up with her and his father. Jones testified, "When we divorced, [defendant] overheard a conversation between me and his dad during his high school years, and his dad claimed all of our children except for him, and that broke him down ever since." Defendant had challenges being accepted and was diagnosed with attention deficit hyperactivity disorder (ADHD). According to Jones, defendant was expecting a child and had been trying to obtain a second job. Defendant wanted to get his own house, and "he said he was going to teach this kid that there was more to life than what he did." According to Jones, defendant would not hurt a fly and he used "a lot of slang language from being in Georgia."

¶ 18                                    4. *Maurice Hayes*

¶ 19          Maurice Hayes testified he was the "CEO and founder of HV Neighborhood Transformation, which is a nonprofit organization geared towards motivational mentorship and violence interruption." When asked how he knew defendant or defendant's family, Hayes stated, "That's my—my old coach, that's his stepson. That's my nephew." Hayes testified defendant was a good kid and made a lot of stupid decisions. Hayes stated, "He had a BB gun. If he really wanted to do something, you know, it's easy to get guns on the street, so he was playing, like he played roles, man, and you get caught up in the wrong crowd and situations." According to Hayes, his organization provided a support system where defendant could obtain job training, employment, and housing. Hayes testified, "Whenever he come home, I got him, and we going

- 4 -

to make sure that we don't travel this road no more." Hayes agreed someone had to want to change their ways to be in his program.

¶ 20                                    5. *Recommendations*

¶ 21          The State noted two of defendant's juvenile offenses, including a felony burglary, occurred "before this alleged conversation that supposedly put him on the path to crime." Defendant went to the Department of Juvenile Justice for all three of his juvenile cases. The State further noted defendant received a 15-year sentence for the 2017 Georgia case and was on parole when he committed the aggravated robbery. Although the State acknowledged defendant used a BB gun, it pointed out the victim did not know it was a BB gun.

¶ 22          The State argued defendant indicated he would batter McClain if he encountered him in jail, talked about retaliation, and talked about getting a gun when he got out of imprisonment. The State pointed to Hayes's testimony that a person must want to change to be a good candidate for his program. The State noted that as recently as the previous Saturday, the victim received information the State characterized as "veiled threats" from defendant's brother. The State acknowledged that it did not know if defendant was behind the "threats," but his brother sent the victim a photo of defendant in jail. The State argued defendant did not want to change his ways. The State recommended a term of 10 years' imprisonment.

¶ 23          Defense counsel argued defendant's phone calls from jail demonstrated bravado and did not mean he was going to follow through on those actions. Defense counsel argued, "[L]et me remind the Court how Mr. Ahmed Saleh, the victim in this case, got involved in this. He saw a black man with tattoos on his face approach him and said, 'Hey, those are nice. Oh, by the way, do you have drugs? Do you have drugs?' And he saw that as an opportunity to make a quick buck." Defense counsel emphasized that defendant used a BB gun, did not pull the trigger,

and no one was injured. Counsel asserted the victim was unsympathetic for assuming defendant had drugs.

¶ 24    Defense counsel argued defendant was "not too far gone," and had people like Hayes to help him turn his life around. Defense counsel asked the trial court to give defendant the opportunity "to get his life in order, to get a job, to provide for his child so we break this cycle that we have of children being born without their fathers being around because they're in prison."

¶ 25    Defendant made a statement in allocution, apologizing for his actions. Defendant also apologized to his mother, the court, and all the people involved. Defendant stated, "I also have a child on the way. I want to be there for my child. I would just ask that you please allow me to work and care for my child so I can turn my life around and I can do better by surrounding myself with the right people like Mr. Hayes."

¶ 26                                    B. Sentence

¶ 27    The trial court stated it considered the PSI report, the testimony presented by the State and defendant, and the statutory factors in aggravation and mitigation. The court summarized defendant's prior criminal history as follows:

"As to the statutory aggravating factors, we have the defendant's prior juvenile record out of Georgia, a theft adjudication in March of 2013, committed to the Department of Juvenile Justice, in August 2013 burglary, committed to the Department of Juvenile Justice, in March of 2014 another burglary, commitment to the Department of Juvenile Justice, and then in February of '17 a robbery and aggravated assault, sentenced to 15

- 6 -

years in the Georgia Department of Corrections.  So his prior criminal history is definitely a statutory factor in aggravation." The court also noted the deterrent factor and stated it had to fashion a sentence that would deter defendant and other similarly situated individuals from committing such an offense.

¶ 28       The trial court stated that "the mitigating factors are not necessarily statutory mitigating factors," but it found defendant's young age of 22 years old to be a nonstatutory mitigating factor.  The court further found that defendant used a BB gun was a mitigating factor and indicated he had no real intention of harming the victim.  The court noted firearms were easily accessible and "the fact that he was using a pellet pistol is an odd mitigating factor."

¶ 29       The trial court considered the circumstances of the offense and noted that, as defense counsel indicated, "this victim took one look at the defendant, and because of the way the defendant looked and because of the color of his skin just assumed that he had drugs ready for sale and set up a meeting to buy drugs from the defendant.  Now, the defendant used this as an opportunity to get money from the victim."  The court further acknowledged the argument that the statements defendant made during the jail phone calls were just bravado.

¶ 30       The trial court went on to consider whether defendant was dangerous or whether a sentence of probation or conditional discharge would deprecate the seriousness of the offense and be inconsistent with the ends of justice.  The court stated as follows:

> "The one incident that was testified to was that subsequent to this robbery, the defendant pulled that BB gun on a bus driver.  On a bus driver?  That's an indication that this young man has some serious issues and is potentially prone to violence.  Again, fortunately, it was that same BB gun, that same pellet pistol, but

again, I think that incident speaks volumes about his rehabilitative potential at this point. I mean, he got a 15-year sentence to the Department of Juvenile—to prison in Georgia and he comes out on parole December 14—December 4th of 2019 and he commits this offense approximately two or three months after that."

The court found defendant was dangerous and a sentence of probation or conditional discharge would deprecate the seriousness of his conduct and be inconsistent with the ends of justice. The court sentenced defendant to 10 years' imprisonment.

¶ 31        Defendant filed a motion to reconsider the sentence, arguing the sentence was excessive in light of defendant's young age, defendant's ADHD diagnosis, the resources available to defendant through Hayes's organization, the expected birth of defendant's child, and defendant's rehabilitative potential as shown by his ability to hold past employment. At the hearing on the motion to reconsider the sentence, the trial court stated it "considered all of the appropriate factors in fashioning a sentence; the circumstances surrounding the offense; the history, character, and condition of the defendant; mitigation that was apparent in the record, and the statutory factors in aggravation." The court denied the motion to reconsider.

¶ 32        This appeal followed.

¶ 33                                II. ANALYSIS

¶ 34        On appeal, defendant argues the trial court abused its discretion when it determined no statutory mitigating factors were applicable, although the court was required to consider the impending birth of defendant's first child. The State asserts defendant forfeited this argument by failing to raise the specific arguments made on appeal before the trial court. Alternatively, the State asserts no error occurred.

¶ 35    Under the plain-error doctrine, the defendant must first demonstrate a clear or obvious error. *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1187 (2010). "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.* Because we conclude no error occurred, we address the merits of defendant's argument.

¶ 36    A trial court's sentencing decisions are given substantial deference. *People v. Snyder*, 2011 IL 111382, ¶ 36, 959 N.E.2d 656. We will disturb a sentence within the statutory limits for the offense only if the trial court abused its discretion. *People v. Flores*, 404 Ill. App. 3d 155, 157, 935 N.E.2d 1151, 1154 (2010). A court abuses its discretion when imposing a sentence "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210, 737 N.E.2d 626, 629 (2000).

¶ 37    In determining an appropriate sentence, the trial court may consider the seriousness, nature, and circumstances of the offense, including the nature and extent of the elements of the offense. *People v. Saldivar*, 113 Ill. 2d 256, 271-72, 497 N.E.2d 1138, 1144 (1986). The court is not required to explicitly outline the factors considered for sentencing, and we presume the court considered all mitigating factors absent explicit evidence to the contrary. *People v. Meeks*, 81 Ill. 2d 524, 534, 411 N.E.2d 9, 14 (1980). Each sentencing decision must be based on a consideration of factors including "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999). The trial court is better able to weigh these factors, having

observed the defendant and proceedings. *Id.* We will not substitute our judgment for that of the trial court merely because we may have balanced the factors differently. *Id.*

¶ 38 In this instance, defendant faced a sentence ranging from probation to a period of 4 to 15 years in the Illinois Department of Corrections, followed by a two-year period of mandatory supervised release. Here, the trial court stated it considered the PSI report, the testimony presented by the State and defendant, and the statutory factors in aggravation and mitigation. The court considered defendant's prior criminal history as a factor in aggravation, which included a conviction for robbery and aggravated assault that he was on parole for at the time of the offense. The court also noted the deterrent factor and stated it had to fashion a sentence that would deter defendant and other similarly situated individuals from committing such an offense.

¶ 39 In addressing mitigating factors, the trial court stated, "the mitigating factors are not necessarily statutory mitigating factors," but it found defendant's young age of 22 years old to be a nonstatutory mitigating factor. The court further found that defendant used a BB gun was a mitigating factor and indicated he had no real intention of harming the victim. The court noted firearms were easily accessible and "the fact that he was using a pellet pistol is an odd mitigating factor."

¶ 40 Although the trial court did not explicitly address the impending birth of defendant's child, we presume the court considered all mitigating factors absent explicit evidence to the contrary. *Meeks*, 81 Ill. 2d at 534. Moreover, the record shows defense counsel asked the trial court to give defendant the opportunity "to get his life in order, to get a job, to provide for his child so we break this cycle that we have of children being born without their fathers being around because they're in prison." Additionally, in his statement in allocution,

defendant stated, "I also have a child on the way. I want to be there for my child. I would just ask that you please allow me to work and care for my child so I can turn my life around and I can do better by surrounding myself with the right people like Mr. Hayes." Finally, at the hearing on the motion to reconsider the sentence, the trial court stated it "considered all of the appropriate factors in fashioning a sentence; the circumstances surrounding the offense; the history, character, and condition of the defendant; *mitigation that was apparent in the record*, and the statutory factors in aggravation." (Emphasis added.) The evidence defendant asserts the court failed to consider was presented to the court, and there is no explicit evidence the court did not consider the impending birth of defendant's child. The court was not required to recite and assign value to each factor it considered in imposing the sentence. *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38, 92 N.E.3d 494.

¶ 41      The trial court also concluded defendant was dangerous and a sentence of probation or conditional discharge would deprecate the seriousness of the offense and be inconsistent with the ends of justice. In making its findings, the court noted defendant had been out on parole for only two to three months before the incident where he pulled a gun on a bus driver, which the court found spoke volumes about defendant's rehabilitative potential. Under these circumstances, we cannot say the trial court abused its discretion in sentencing defendant to a term of 10 years' imprisonment.

¶ 42                              III. CONCLUSION

¶ 43      For the reasons stated, we affirm the trial court's judgment.

¶ 44      Affirmed.