2023 IL App (1st) 211081-U

No. 1-21-1081

Order filed December 13, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 8077 |
| | ) | |
| JAMES COTTON, | ) | Honorable |
| | ) | Michele McDowell Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE R. VAN TINE delivered the judgment of the court.
Presiding Justice Reyes and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the trial court's second-stage dismissal of defendant's postconviction petition alleging ineffective assistance of trial counsel because defendant failed to make a substantial showing that counsel rendered ineffective assistance by failing to present certain evidence of defendant's history of mental health issues in mitigation at sentencing.

¶ 2    Defendant James Cotton appeals from the second-stage dismissal of his petition pursuant

to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)), contending that

he made a substantial showing that trial counsel rendered ineffective assistance by failing to

present certain evidence of defendant's history of mental health issues at sentencing. Specifically, defendant claims that multiple witnesses informed counsel of defendant's mental health issues, but counsel chose not to elicit their testimony at the sentencing hearing. Defendant contends that there is a reasonable probability the trial court would have imposed a lesser sentence if counsel had presented such evidence. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                 A. Trial and Sentencing

¶ 5    Defendant was charged with one count of first degree murder (720 ILCS 5/9-1(a)(2) (West 2010)). At defendant's jury trial, the evidence established that, on the night of March 29, 2010, defendant was walking to his aunt's home when Romeo Burdine approached him seeking to buy drugs.[1] *Cotton*, 2016 IL App (1st) 132820-U, ¶ 18. Defendant and Burdine went to Burdine's apartment, where they smoked marijuana and crack cocaine, drank alcohol, and watched pornographic movies. *Id.* ¶¶ 18-19. Burdine told defendant that he was gay and HIV positive, and the defendant responded that he was not gay and warned the victim not to "come on" to him. *Id.* Later that night, defendant began masturbating and Burdine attempted to perform oral sex on him. *Id.* ¶ 20. Defendant left the apartment but returned to retrieve his phone charger. *Id.* As defendant tried to leave the apartment a second time, Burdine grabbed the hood of his jacket and demanded defendant pay him for the drugs and alcohol. *Id.* Defendant denied owing Burdine anything, and the two men began to fight. *Id.* Defendant struck Burdine three times with his elbows and Burdine began snoring. *Id.* Defendant then poured bleach on Burdine to clean blood off his body. *Id.* ¶ 22.

---

[1] The record on appeal does not include a report of proceedings for the jury trial. Accordingly, we rely on our prior decision to furnish the facts relevant to the resolution of this appeal. See *Cotton*, 2016 IL App (1st) 132820-U, ¶¶ 15-30.

Defendant left the apartment with Burdine's DVD player and DVDs, which he planned to sell for drugs. *Id.*

¶ 6    Police arrested defendant on April 5, 2010. *Id.* ¶ 23. When police officers questioned him, defendant denied knowing Burdine, did not mention fighting with him, and denied stealing Burdine's DVD player and DVDs. *Id.* He eventually admitted to police that he poured bleach on Burdine to "erase the evidence." *Id.* ¶ 64. However, at trial, defendant denied that was his intent. *Id.* ¶ 25. When police told defendant that Burdine had died, defendant admitted that he fought with Burdine but told police various versions of the events thereafter. *Id.* The jury found defendant guilty of first degree murder.

¶ 7    At the sentencing hearing on August 21, 2013, the court stated that it had reviewed the presentence investigation report (PSI). The PSI indicated that defendant claimed he had been diagnosed with mild depression while enrolled in a drug rehabilitation program in 2001. He was prescribed medication for depression but took it for only a short period of time. According to the PSI, defendant experienced no need for mental health treatment after 2001.

¶ 8    In aggravation, the State presented a victim impact statement from Burdine's brother, Swayzer Burdine. Swayzer stated that his brother was a kind and loving person who was close to his family. Burdine's murder was the first time the family had experienced a violent death. The State requested a 50-year sentence, 10 years less than the 60-year maximum sentence for first degree murder (730 ILCS 5/5-4.5-20(a) (West 2010)).

¶ 9    In mitigation, defendant's mother, Sharon Flemister, testified that "drugs and alcohol took over [defendant's] life." Defendant became sober in jail while awaiting trial, and his mother believed that he had potential for rehabilitation. Defendant's stepfather, Theodoric Flemister, testified that defendant had a positive impact on his family. Prior to being arrested, defendant

attended church, excelled in sports, earned a college scholarship, was employed, and volunteered. Theodoric acknowledged that defendant had "self-destructive tendencies via addictions," but testified that defendant had never hurt another person prior to this incident.

¶ 10    Christina Reid, a family friend, stated that she had known defendant since he was 10 years old and regarded him as a nephew. As a child, defendant was athletic and popular in school, and she was optimistic for defendant's future when he left to attend college. However, he struggled with drug and alcohol addiction after college and alternated between employment and periods of substance abuse. Defendant became sober, mature, and spiritual while in jail. Reid acknowledged that defendant would always struggle with addiction but noted that he now had resources to help. She assured the court that defendant had a supportive community that loved him and would always be available to help him.

¶ 11    Camilla Hudson, also a family friend, stated that she had known defendant for approximately 13 years. Defendant struggled with drug and alcohol addiction but wanted to overcome his addiction and hoped to become a productive and contributing member of his family and society. Hudson requested that defendant be allowed to attend drug and alcohol rehabilitation instead of prison.

¶ 12    Defendant also presented three letters in mitigation. Nontombi Norma Tutu, the daughter of Archbishop Desmond Tutu, stated that she met defendant while attending a fundraiser for the Foundation for Hospices in Sub-Saharan Africa. Defendant was volunteering at the event and spoke with her about the challenges facing young African and African American men. She also met defendant's family and believed that they would support his rehabilitation.  Linda Hannah, a family friend and the director of a pre-apprenticeship program that defendant completed, stated that defendant was a model student with excellent attendance and that he had hoped to become a

plumber or electrician. Hannah acknowledged that defendant was a troubled young man in some respects but noted that he got along well with his classmates. Reverend Dr. Jeremiah Wright, defendant's family's pastor for 36 years, stated that defendant had found a deep and genuine relationship with God while in jail.[2]

¶ 13    In allocution, defendant insisted that he acted in self-defense when Burdine tried to engage in sexual activity with him and stated that, while in jail, he had grown spiritually, started two ministries, and restored his relationship with his son. *Cotton*, 2016 IL App (1st) 132820-U, ¶ 36. Defendant also presented a group exhibit consisting of letters from family members, clergy, coworkers, and doctors. *Id.* ¶ 34. Defense counsel argued that defendant had no prior history of violence, no prior felony convictions, and had only received supervision for his prior misdemeanor battery and criminal sexual abuse convictions. *Id.* ¶ 35. Defendant requested the minimum sentence of 20 years. *Id.*

¶ 14    The trial court stated that it "considered the large amount of mitigation evidence" and sentenced defendant to 37 years' imprisonment. *Id.* ¶ 38. The court explained that defendant's drug and alcohol addiction did not excuse his brutal murder of Burdine. *Id.* ¶ 37. The court noted that, although he asked for mercy at sentencing, "defendant showed no mercy in killing the victim." *Id.* The court also rejected defendant's claim of self-defense because the jury had already rejected that theory. *Id.* Defendant filed a motion to reconsider the sentence, which the trial court denied. *Id.* ¶ 39.

---

[2] The report of proceedings for the sentencing hearing does not include the remainder of Wright's letter, the State's or defendant's argument, or the trial court's ruling. Accordingly, we rely on our prior decision to furnish the facts relevant to the resolution of this appeal. See *Cotton*, 2016 IL App (1st) 132820-U, ¶¶ 33-39.

¶ 15    On direct appeal, defendant raised allegations of constitutional violations at trial and argued that his 37-year sentence was excessive because it was effectively a life sentence. *Id.* ¶ 88. This court affirmed defendant's conviction and sentence, reasoning that the trial court "properly balanced the seriousness of the offense with the defendant's potential for rehabilitation." *Id.* ¶ 95. This court explained that the trial court adequately considered the "great amount of mitigation evidence" and defendant's struggles with drug and alcohol addiction, and properly balanced that mitigating evidence against the seriousness of the offense. *Id.* ¶¶ 90-91.

¶ 16                                    B. Postconviction Proceedings

¶ 17    In August 2018, defendant filed a *pro se* postconviction petition. Defendant alleged that trial counsel rendered ineffective assistance by failing to investigate his mental health despite knowing about defendant's history of self-harm and suicide attempts. Specifically, defendant alleged that counsel saw cuts and bruises on defendant's arms, which were evidence of self-harm. Defendant argued that counsel's failure to investigate his mental health resulted in no behavioral clinical examination (BCX) or hearing to determine defendant's fitness to stand trial, and that, even if he had been found fit to stand trial, he still could have introduced the results of a BCX as mitigation evidence at sentencing.[3]

¶ 18    Defendant attached to his petition his own affidavit claiming that he told trial counsel that he had been diagnosed with bipolar disorder and depression in 2002 and was prescribed multiple medications for those issues. Defendant attested that his medication ran out after he completed rehabilitation and, as a result, he began using drugs again. He also attested that counsel knew that he had a history of self-harm and suicide attempts.

_____

[3] Defendant does not appeal the dismissal of his claims that counsel rendered ineffective assistance by not seeking a BCX or fitness hearing.

¶ 19    Defendant also attached affidavits from his mother, his sister, Reid, and Hannah. His mother attested that she told trial counsel of defendant's "ongoing battle with drugs, alcohol, depression, [and] anxiety." She also told counsel that defendant sought therapy and counseling for depression and erratic behavior in 1991, and that, sometime prior to trial, she saw burn marks on defendant's arms and heard defendant say that he felt worthless and ashamed. Defendant's sister, Tamarra Allen, attested that she believed defendant had suffered from depression and anxiety since he was an adolescent. She also suspected that defendant suffered from bipolar disorder but acknowledged that he had not been so diagnosed. When defendant lived with Allen in 2002, she saw him using cigarettes to burn his arm. Allen attested that she provided this information to trial counsel. Reid attested that she had "extensive conversations" with trial counsel about defendant's history of anxiety, depression, and struggles with drug and alcohol abuse dating back to his "teen years." She told counsel that defendant would "mutilate his own skin with burns and piercings and attempt to self-medicate with controlled substances." Hannah attested that, while defendant was enrolled in her pre-apprenticeship program, he said that he took antidepressants but was unable to get his prescriptions refilled. Hannah also attested that prior to trial, defendant "did not understand the advice of counsel," seemed depressed, and "constantly said he needed medication for depression."

¶ 20    Finally, defendant attached medical records to his petition. Billing records from a drug rehabilitation program indicate that defendant underwent treatment between April 24, 2000, and October 6, 2003. Defendant was billed twice each for "Detox" and "Rehab," once for "In patient Assessment," and three times for "Psych Exam Follow-Up." A July 26, 2017, psychiatric diagnostic evaluation from Western Illinois Correctional Center notes defendant's history of drug and alcohol abuse. A September 13, 2017, psychiatric progress note, also from Western Illinois

Correctional Center, indicates that defendant claimed he had attempted suicide twice, most recently in 2007. Defendant also claimed he had a history of self-harm by burning. A January 28, 2017, mental health progress note from Menard Correctional Center states that defendant claimed he began burning himself with cigarettes after he realized that he had a substance abuse problem. Defendant also "report[ed] symptoms of depression" due to his son not responding to letters but denied having suicidal ideation and denied inflicting self-harm while in prison. Defendant was diagnosed with post-traumatic stress disorder.

¶ 21    The trial court advanced defendant's petition to the second stage and appointed postconviction counsel. The State moved to dismiss the petition, arguing in relevant part that defendant failed to establish prejudice as a result of counsel's failure to investigate his mental health. On April 2, 2021, the trial court appointed defendant new postconviction counsel and heard argument on the State's motion to dismiss. On July 23, 2021, the court granted the State's motion to dismiss, finding, in part, that defendant's "alleged mental illness" was "not a diagnosis that has been given to this Court." The court also noted that, during preparation of the PSI, defendant stated that he did not need mental health services.

¶ 22    Defendant timely appealed.

¶ 23                                II. ANALYSIS

¶ 24    On appeal, defendant argues that he made a substantial showing that trial counsel rendered ineffective assistance by failing to present evidence at sentencing that he suffered from mental health issues beyond drug and alcohol addiction. Specifically, defendant contends that counsel should have presented, as mitigation evidence, his alleged history of depression, suicidal ideation, self-harm, and bipolar disorder.

¶ 25    Defendant could have raised this claim of ineffective assistance of trial counsel on direct appeal, but he did not. In postconviction proceedings, a defendant typically forfeits an issue that he could have, but did not, raise on direct appeal. See *People v. English*, 2013 IL 112890, ¶ 22. However, the doctrine of forfeiture is "relaxed *** where the facts relating to the issue do not appear on the face of the original appellate record." *Id.* That is the case here. Defendant's petition is based on matters outside of the original appellate record, namely, affidavits and medical records regarding his mental health history. Furthermore, the State does not argue forfeiture, so it has forfeited defendant's forfeiture of these claims. See *People v. Jones*, 2018 IL App (1st) 151307, ¶ 47. Therefore, we hold that defendant has not forfeited his ineffective assistance of counsel claim, and we will address the merits of this appeal.[4]

¶ 26    The Post-Conviction Hearing Act (725 ILCS 5/122-1(a)(1) (West 2018)) provides a three-stage process by which a criminal defendant can allege that his constitutional rights were violated at trial or sentencing. *English*, 2013 IL 112890, ¶ 21. In this case, the trial court dismissed defendant's petition at the second stage. At the second stage, the trial court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 33. The second stage tests the legal sufficiency of the petition, and the court may not engage in fact-finding or weigh credibility. *Id.* ¶ 35 (quoting *People v. Coleman,* 183 Ill. 2d 366, 385 (1998)). We take as true all well-pleaded facts not positively rebutted by the trial record, and the question is whether the allegations, if proven at an

---

[4] We do, however, hold that defendant has forfeited his claim that trial counsel rendered ineffective assistance by failing to correct the PSI to include his history of additional mental health issues. Defendant did not include this claim in his postconviction petition; rather, he raises it for the first time on appeal. See *People v. Tapia*, 2014 IL App (2d) 111314, ¶ 34, 45 (citing *People v. Meeks*, 81 Ill. 2d 524, 533 (1980) ("any objections to the sufficiency of the report must first be presented to the trial court.")).

evidentiary hearing, would entitle a defendant to relief. *Id.* We review the second-stage dismissal of a postconviction petition *de novo*, meaning that we perform the same analysis as the trial court. See *People v. Cotto*, 2016 IL 119006, ¶ 24; *People v. Begay*, 2018 IL App (1st) 150446, ¶ 34.

¶ 27    To establish ineffective assistance of trial counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984). A defendant must satisfy both prongs of the *Strickland* test. *People v. Patterson,* 192 Ill. 2d 93, 107 (2000). We address the prejudice prong first. See *People v. Johnson*, 2021 IL 126291, ¶ 53 (a court may proceed directly to the prejudice prong without addressing the objective reasonableness of counsel's performance). To establish prejudice, a defendant must show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding at issue would have been different. *Strickland,* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v. Griffin*, 178 Ill. 2d 65, 74 (1997). A defendant may not merely speculate that he *may* have been prejudiced; rather, he must "affirmatively prove" that "substantial prejudice" resulted from counsel's error. *Strickland*, 466 U.S. at 693; *Johnson*, 2021 IL 126291, ¶ 52.

¶ 28    When imposing a sentence, a court must consider several factors, including the nature of the offense and the defendant's rehabilitative potential. *People v. Charles*, 2018 IL App (1st) 153625, ¶ 45. The court must determine the weight of each factor and consider all mitigating evidence presented. *Id.* The seriousness of the offense is the most important factor in sentencing. See *id.* ¶ 45 ("the court need not impose the minimum sentence merely because there are mitigating factors."); *People v. Foxx*, 2018 IL App (1st) 162345, ¶ 50; *People v. Kelley*, 2015 IL App (1st) 132782, ¶ 94. Absent evidence to the contrary, we presume the trial court properly considered the

mitigating evidence presented. *People v. Sauseda,* 2016 IL App (1st) 140134, ¶ 19. As noted above, defendant claims that he was prejudiced by counsel's failure to introduce evidence of his mental health issues beyond drug and alcohol addiction as mitigation at sentencing.

¶ 29    We find that defendant does not make a substantial showing of prejudice under *Strickland*. There is no reasonable probability that the trial court would have imposed a lesser sentence if counsel had presented evidence that defendant may have, at some point, suffered from depression, suicidal ideation, self-harm, and bipolar disorder. Defendant's sentence was based primarily on the seriousness of the crime, which is the most important factor in sentencing. See *Charles*, 2018 IL App (1st) 153625, ¶ 45 (severity of the offense outweighs mitigating factors). The evidence at trial established that defendant committed a brutal murder and repeatedly tried to cover it up, first by pouring bleach on Burdine's body and then by lying to police. Additional evidence of defendant's mental health issues at sentencing would not have changed the facts of this crime or the trial court's evaluation of its seriousness.

¶ 30    Despite the gruesome nature of this crime, defendant received a sentence in the middle of the range for first degree murder, which carries a maximum sentence of 60 years.[5] See 730 ILCS 5/5-4.5-20(a)(1) (West 2012). The trial court sentenced defendant to 23 years less than the maximum based on the robust mitigation package that trial counsel presented. That mitigation package included evidence of defendant's addiction to drugs and alcohol, which are types of mental health issues, so it is inaccurate to say that counsel failed to present evidence of defendant's mental health issues at sentencing. Defendant's addiction issues were much more relevant to this

---

[5] In some cases, the maximum sentence for first degree murder can be 100 years (*id.* § 5-4.5-20(a)(2)) or natural life (*id.* § 5-4.5-20(a)(1)(3)).

drug-fueled murder than the other mental health issues his petition alleges. It is unlikely that the trial court would have reduced defendant's sentence further based on generalized, non-expert claims that he may have experienced depression, suicidal ideation, self-harm, and bipolar disorder years before or after murdering Burdine.

¶ 31    The materials that defendant attached to his petition do suggest that he suffered from mental health issues beyond drug and alcohol addiction at some point, and that his friends and family told trial counsel as much. However, defendant fails to show how those facts affected his understanding of his actions or his ability to obey the law such that his sentence would have been reduced. See *Id.* § 5-3.1(a)(16). To put it simply, the fact that defendant experienced suicidal ideation does not explain killing someone else. Similarly, the fact that defendant inflicted self-harm by burning himself does not justify pouring bleach on Burdine to conceal evidence of the murder.

¶ 32    Defendant argues that his mental illness was "directly relevant to his culpability for this offense and his rehabilitative potential." He contends that his lack of access to mental health medication at the time of the murder caused him to relapse into drug and alcohol abuse. However, he fails to explain why, specifically, this evidence would have resulted in a lesser sentence in this case. Evidence of defendant's mental health issues would not have been "inherently mitigating." See *People v. Madej*, 177 Ill. 2d 116, 139 (1997); see also *People v. Holman*, 2014 IL App (3d) 120905, ¶ 75. Indeed, evidence of mental illness combined with drug and alcohol addiction may be an *aggravating* factor, as it may make the defendant more dangerous and support a longer sentence. See *People v. Ballard*, 206 Ill. 2d 151, 189-90 (2002) (evidence of mental illness coupled with drug and alcohol dependencies may demonstrate dangerousness); *Holman*, 2014 IL App (3d) 120905, ¶ 75 (defendant's history of mental health issues and substance abuse problems not

inherently mitigating where defendant "had been given numerous previous chances at rehabilitation").

¶ 33    The cases that defendant cites are factually dissimilar, do not involve postconviction proceedings, and do not support advancing this case to the third stage. See, *e.g.*, *People v. Robinson*, 221 Ill. App. 3d 1045, 1052 (1991) (reducing the defendant's 20-year sentence for aggravated criminal sexual assault by 10 years on direct appeal because the defendant was diagnosed and hospitalized for schizoaffective disorder during trial); *People v. Williams*, 62 Ill. App. 3d 966, 975 (1978) (reducing the defendant's 40 to 140-year sentence for armed robbery and attempted murder on direct appeal because of the defendant's young age, lack of criminal history, troubled family history, and suicidal thoughts).

¶ 34    Finally, we note that, at the time of defendant's sentencing hearing in 2013, "serious mental illness" was not included in the Unified Code of Corrections' list of mitigating factors that the trial court must consider. See 730 ILCS 5/5-3.1(a) (West 2012); see also *People v. Brunner*, 2012 IL App (4th) 100708, ¶ 64 (noting that the legislature purposefully left out defendant's "mental-health issues" as a mitigating factor). The legislature only added "serious mental illness" as a mitigating factor in 2016. 730 ILCS 5/5-3.1(a)(16) (West 2016). Even if trial counsel had presented additional evidence of defendant's mental health issues, the trial court was, at the time, under no obligation to consider it in mitigation. Accordingly, we hold that defendant fails to establish prejudice under *Strickland*. Because we resolve defendant's claim of ineffective assistance of counsel due to his failure to demonstrate prejudice, we need not decide whether counsel's performance was objectively reasonable. See *Johnson*, 2021 IL 126291, ¶ 53.  As defendant cannot meet the prejudice prong of the *Strickland* test, his postconviction claim of ineffective assistance of counsel fails, and the trial court properly dismissed it.

¶ 35                                III. CONCLUSION

¶ 36    For the foregoing reasons, we affirm the trial court's second-stage dismissal of defendant's

postconviction petition.

¶ 37    Affirmed.